BIGNELL ET AL., RESPONDENTS, *v.* CUMMINS, RECEIVER, APPELLANT.

(No. 5,329.)

(Submitted November 17, 1923. Decided December 24, 1923.)

[222 Pac. 797.]

*Banks and Banking—Insolvent Banks—Counties—Preference Right to Payment of County Funds—"Sovereignty."*

Banks and Banking—Insolvent Banks—Counties—Preference Right to Payment of County Funds not Existent.

1. In an action by sureties to establish a preference upon the assets of an insolvent bank to satisfy the amount which they were

---

1. Right to preference in respect to public funds in bank which subsequently becomes insolvent, see notes in 8 Ann. Cas. 116; Ann. Cas. 1916B, 1264; 5 L. R. A. (n. s.) 886; 16 L. R. A. (n. s.) 918; L. R. A. 1917A, 683.

[69 Mont. 294.]

required to pay a county for funds on deposit therein at the time of its suspension, *held* that in the absence of constitutional or statutory provision conferring the right of sovereignty upon counties they do not possess it; that therefore the county could not assert the right of preference with respect to county funds lawfully on deposit in the bank which the state enjoys in its sovereign capacity, and hence that the sureties were not entitled to claim that they were subrogated to such right of preference.

State Sovereignty—Counties Do not Possess.
2. "Prerogative" or its synonym "sovereignty" means the inherent power of the people; it must involve the general interest of the state at large, and though the prerogative of the state may be invoked for the protection of the rights of a county—its agent or creature—the county, in the absence of express authority granting it, does not itself possess the power of the sovereign.

*Appeal from District Court, Powell County; Geo. B. Winston, Judge.*

ACTION by Henry Bignell and others against E. J. Cummins, substituted for D. D. Johnson, receiver of the First State Bank of Ovando. Judgment for plaintiffs and defendant appeals. Reversed and remanded, with directions.

Cause submitted on briefs of Counsel.

*Mr. E. J. Cummins, pro se.*

*Mr. S. P. Wilson,* for Respondents.

*Mr. Jos. R. Wine, Amicus Curiae.*

A county has a preference right over general creditors in the case of an insolvent bank. (*First Nat. Bank* v. *C. Bunting & Co.,* 7 Idaho, 27, 59 Pac. 929, 1106; *Watts* v. *Board of Commrs.,* 21 Okl. 231, 16 L. R. A. (n. s.) 918, 95 Pac. 771; *Board of Commrs.* v. *Patterson,* 149 Fed. 229; *Brown* v. *Sheldon State Bank,* 139 Iowa, 83, 117 N. W. 289; *Greeley* v. *Provident Sav. Bank,* 98 Mo. 458, 11 S. W. 980; *American Bonding Co.* v. *Reynolds,* 203 Fed. 356; *Board of Levee Commrs.* v. *Powell,* 109 Miss. 415, 69 South. 215.)

*Messrs. Walsh & Nagle, Amici Curiae.*

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Desiring to be designated a depositary for money coming into the hands of the treasurer of Powell county, the First State Bank of Ovando executed and delivered to M. F. Hayes, the treasurer, a bond in the sum of $40,000, as required by an order of the county commissioners. The plaintiffs and two others signed the bond as sureties. It was filed with the treasurer on March 7, 1921, and thereafter the treasurer deposited large sums of money with the bank. He had there on June 16, 1921, $19,765.71, the same being public funds collected and received by him "from taxes assessed, levied and collected by virtue of the laws of the state of Montana, and for the purpose of maintaining the government of said county of Powell, and the state of Montana, and for the maintenance of law and order, and the rights of the citizens of said county and state, and the tribunals of justice thereof, and public order, and the execution and enforcement of law, and for the further purpose of the maintenance of the educational institutions of said county and state, and the support of the indigent, and for the carrying on of the work of internal improvements and the various agencies of government of said county and state in the interests of the citizens," in the language of the agreed statement of facts.

Because of its failing condition the superintendent of banks took charge of the bank on June 16, 1921, and retained control until July 22, 1921, when he delivered it over to a receiver. As he was unable to obtain the funds on deposit in the bank from the receiver, the treasurer demanded payment from the sureties with the result that the plaintiffs were compelled to and did pay him the sum of $19,926.82, being the money on deposit June 16, 1921, with interest accrued.

The plaintiffs, claiming to be subrogated to the county's rights, then brought this suit against the receiver to establish a preference upon all of the bank's assets to satisfy the amount they had paid to the treasurer.

Finding for the plaintiffs, the court entered judgment to the effect that out of the funds and assets of the bank in the hands of the receiver he first pay the costs of this action, both of plaintiffs and defendants, and the costs, expenses, charges and compensation of the receiver as the same may be allowed, subject to which the plaintiffs were granted a preferred claim upon all of the assets of the bank prior and superior to any other creditor of the bank. The receiver appeals.

The action of the court in finding for the plaintiffs is based upon the theory that a county has the same right of preference with respect to deposits in banks which the state enjoys in its sovereign capacity. In *Ætna Accident & Liability Co.* v. *Miller*, 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760, this court held that under the common law, in the absence of statutory or constitutional provisions on the subject, the state is entitled to a preference, as a prerogative right, over the unsecured creditors of an insolvent bank in which it has funds on deposit, so long as the debtor bank retains title to the property out of which payment is to be made. And in *State ex rel. Rankin* v. *Madison State Bank*, 68 Mont. 342, 218 Pac. 652, we had occasion to examine the subject again and we said: "Since this state, in virtue of its sovereignty, had the preference right conferred by the common law, and could lose it only by the declaration of the law-making power, and since we fail to find any statutes from which a legislative purpose to waive the right can be deduced, we adhere to our former decision, and hold that the right still exists in all its force and vigor."

Under the Articles of Confederation each state was sovereign. When the thirteen states formed the Union under the Constitution, they granted to the federal government certain powers only. All powers not granted to the federal government were

reserved in themselves. Every state which came into the Union thereafter came in upon an equal footing with the original states. This means that the people of each state possess the paramount power of carrying on a state government independently of the other states, under the Constitution of the United States.

When Montana came into the Union, possessing such state sovereignty, it continued the scheme of local government by counties which had been found convenient under the territorial system. The counties which existed under the territory became the original counties of the state.

Since it is contended that the several counties of the state [1, 2] share the sovereign right of the state and as the question is of first impression in this jurisdiction, it may be well to inquire as to whether there is any substantial basis for this claim which able counsel so earnestly assert.

"The dividing of a state into counties had its origin in England, preceding the organization of the kingdom itself. The civil divisions thus created were thereafter continued, from recognized necessities in government, as other countries had their departments or their provinces. In such divisions it was found that the purposes of local government and of the administration of justice were promoted. Differing from those in England in their origin, counties in this country were first created by the legislatures of the various colonies, and subsequently by the states of the Union. They are, in effect, subdivisions of the state established for the more convenient administration of government, and are invested with such powers as are necessary to be exercised for the welfare, advantage, and protection of the people within their boundaries." (7 Cal. Jur., p. 386.)

Our Code provides that "A county is the largest political subdivision of the state having corporate power." (Sec. 4293, R. C. 1921.) In *Hersey* v. *Neilson,* 47 Mont. 132, Ann. Cas. 1914C, 963, 131 Pac. 30, it became necessary to point out the distinction between a county and a municipal corporation. In

the discussion the court quoted with approval the following from the earlier case of *Independent Pub. Co.* v. *Lewis & Clarke County,* 30 Mont. 83, 75 Pac. 860: "A county is one of the civil divisions of the state for political and judicial purposes, created by the sovereign power of the state of its own will without the consent of the people who inhabit it. (7 Am. & Eng. Ency. of Law, 2d ed., 900.) It is *quasi* corporate in character, but has only such powers as are expressly provided by law or are necessarily implied by those expressed." The court quoted the following definitions from other courts:

"A county is a governmental agency or political subdivision of the state, organized for purposes of exercising some functions of the state government. * * * " (*County of San Mateo* v. *Coburn,* 130 Cal. 631, 63 Pac. 78.)

"It is merely a political agent of the state, created by law for governmental purposes, and is charged with the performance of certain duties for and on behalf of the state." (*Yamhill County* v. *Foster,* 53 Or. 124, 99 Pac. 286.)

"Counties are subordinate agencies for the ordinary government of the state within the scope of their authority; hence they are subject to the control and protection of the legislature, in which chiefly the sovereignty of the state is represented and exercised." (11 Cyc. 341.)

"In speaking of counties and their enforced submission to legislative control, the supreme court of Colorado said: 'They are purely auxiliaries of the state, and to the general statutes of the state they owe their creation, and the statutes confer upon them all the powers they possess, prescribe the duties they owe and impose the liabilities to which they are subject.' (*Board of Commrs.* v. *Wheeler,* 39 Colo. 207, 89 Pac. 50.)" (*Hersey* v. *Neilson, supra.*)

In Chapter 8 of the Political Code, Revised Codes of 1921, under the heading "General Powers and Limitations upon Counties" we find section 4441, which reads as follows: "Every county is a body politic and corporate, and as such has the power specified in this Code, or in special statutes, and such

powers as are necessarily implied from those expressed.'' Searching the Code we find only certain limited authority and powers have been granted a county. It is certain that no sovereign power has been granted expressly. Can it be said that a county has such power by implication?

Counsel for plaintiffs and those who appear as *amici curiae* assert the affirmative. Our attention is called to the different steps taken by the officers of a county in the assessment and collection of taxes for the use and benefit of county and state, the administration of public justice in the courts of the county pursuant to state laws, the maintenance of public highways at county expense for the benefit of the public at large, the support by the county of the indigent poor within their respective borders for the benefit of the state, the exercise of the police powers by the county officers for the protection and well-being of the people of the state, and the like. Hence, it is said as each of these functions and duties are performed in some measure by each county in the state for the use and benefit of the people of the state at large, and as a part of the governmental policies of the state, and without the performance of which the government of the state could not be carried on successfully, it must follow that the county enjoys the state's prerogative.

At common law the word ''prerogative'' includes: ''All the rights and privileges which by law the king hath, as head and chief of the commonwealth, and as entrusted with the execution of the laws.'' ''And hence it follows that it must be in its nature singular and eccentrical; that it can only be applied to those rights and capacities which the king enjoys alone, in contradistinction to others and not to those which he enjoys in common with any of his subjects; for if once any prerogative of the Crown could be held in common with any subject, it would cease to be prerogative any longer.'' (Bacon's Abridgment, ''Prerogative.'')

The word ''prerogative'' implies sovereign right. (*Attorney General* v. *City of Eau Claire*, 37 Wis. 400, 443.) The ex-

pressions are synonymous. With respect to the governmental problems of a free people either expression is apt only when it is used to mean the inherent and paramount power of the people. Expressive of this is section 1 of Article III of the Constitution: "All political power is vested in and derived from the people; all government of right originates with the people; is founded upon their will only, and is instituted solely for the good of the whole."

The sovereignty of the people is expressed by the Constitution, by statute or by law expressly recognized by statute. Of course it is carried out under the Constitution by the three departments of the government. (Article IV, sec. 1.)

Sovereignty must involve the general interest of the state at large. It is true that the whole state has an interest in the proper administration of its laws everywhere within its borders and so it has an interest in the proper government of every county; and so it has in every municipality and in the conduct of every school district and in the prosperity of every citizen. But while the prerogative of the state may be invoked for the protection of the rights of the county, municipality, school district and citizen, it does not follow that any of these possess that power. It must be held that the sovereign right, the prerogative, is lodged in the political power which is created by and is the representative of all the people—the state itself, and that the prerogative of the state may not be exercised by its creature in the absence of express authority granted to the creature.

Granting that the county is an arm of the sovereignty, an agent of the state, an auxiliary and necessary to the proper functioning of the state government, it must be conceded that the county is only a creature of the state which may be abolished at will by the state. The state may even confiscate the county property at pleasure.

In *Rogers Locomotive Machine Works* v. *American Emigrant Co.*, 164 U. S. 559, 41 L. Ed. 552, 17 Sup. Ct. Rep. 188, the court said: "The county of Calhoun is a mere political sub-

division of the state, created for the state's convenience, and to aid in carrying out, within a limited territory, the policy of the state. Its local government can have no will contrary to the will of the state, and it is subject to the paramount authority of the state, in respect as well of its acts as of its property and revenue held for public purposes. The state made it, and could, in its discretion, unmake it, and administer such property and revenue through other instrumentalities. (*Jefferson County* v. *Ford,* 4 Greene (Iowa), 367, 370; *Soper* v. *Henry County,* 26 Iowa, 264, 267; *Maryland* v. *Baltimore & Ohio R. R.,* 3 How. 534, 550; *United States* v. *Railroad,* 17 Wall. 322, 329; *Hamilton County Commrs.* v. *Mighels,* 7 Ohio St. 109, 118; *Askew* v. *Hale County,* 54 Ala. 639, 640; 1 Dillon's Municipal Corporations, secs. 22–23, 54–71, inclusive, and authorities there cited; Angell & Ames on Corporations, sec. 31.)''

And this court said in *Edwards* v. *County of Lewis & Clark,* 53 Mont. 359, 165 Pac. 297: ''A county is but a political subdivision of the state for governmental purposes, and as such is at all times subject to legislative regulation and control, except in so far as the Constitution has placed limitations upon the law-making power. (*Hersey* v. *Neilson,* 47 Mont. 132, 131 Pac. 30.) Within those limitations the legislature may circumscribe or extend the powers to be exercised by a county as it sees fit. The statutes constitute the charter of a county's power, and to them it must look for the evidence of any authority sought to be exercised. (7 R. C. L. 936.)''

It is true that a county enjoys certain immunities in common with the state, and this is because it is a political subdivision of the state, and not by reason of any sovereignty which the county possesses. An instance is seen in *Sullivan* v. *Big Horn County,* 66 Mont. 45, 212 Pac. 1105.

One of the states which strongly maintains the right of the state to the preference of a sovereign respecting deposits in insolvent banks is Georgia. (*Robinson* v. *Bank of Darien,* 18 Ga. 65; *Seay* v. *Bank of Rome,* 66 Ga. 609.) In *County of*

*Glynn* v. *Brunswick Terminal Co.,* 101 Ga. 244, 28 S. E. 604, the court says: "While it may be true that the state on account of its prerogative right, has this preference, we cannot hold that the same right applies to the counties of the state. If there is such a thing as prerogative right of preference on the part of the state, it cannot be divided among the one hundred and thirty-seven counties of which it is composed. (Bacon's Abridgment, vol. 8, under head 'Prerogative.') We think it safe to hold that the county has no such prerogative right as the state. Not having this right, in order to obtain a preference over the other depositors it must show some statutory right. We have no statute which gives a county which is a depositor in a bank a lien or preference over other depositors of the same class. * * * In the absence of any legal right of preference in such cases, the county must stand upon an equal footing with other depositors."

*County of Glynn* v. *Brunswick Terminal Co., supra,* was cited and approved in *Fidelity & Guaranty Co.* v. *Rainey,* 120 Tenn. 357, 405, 113 S. W. 397, 409, in which the supreme court of Tennessee asserts the prerogative right of the state and says: "We are of opinion, however, that this priority does not extend to the counties and municipalities of the state. In *State* v. *Bank of Tennessee,* 5 Baxt. 1, Marion county asserted a claim to priority for a balance due it on account of a deposit in the Bank of Tennessee, but this priority was denied, and it was held that the county stood on an equal footing with other creditors of the bank. (*Leeper* v. *State,* 103 Tenn. 528, 48 L. R. A. 167, 53 S. W. 962." This doctrine was again followed in *Edmonson* v. *Walker,* 137 Tenn. 569, 195 S. W. 168, in which the court says: "Under these authorities we are constrained to hold that the question of power in the county to assert the prerogative right of a sovereign to priority of payment of its taxes in a case like the present does not exist."

Counsel for plaintiffs and friends of the court cite many cases which they say fortify their position that the county of Powell had the preferential right asserted. Upon examination

we find that the cases cited arose (1) under special statutes, or (2) grew out of instances where the deposits were made wrongfully or without authority of law. In *Yellowstone County* v. *First Trust & Savings Bank,* 46 Mont. 439, 128 Pac. 596, it appeared that the treasurer of Yellowstone county had deposited in First Trust & Savings Bank a sum of money, a portion of which was deposited in violation of law. This court held the sum deposited unlawfully constituted a trust fund in the hands of the receiver to which the county was entitled in preference to the general creditors of the bank, and such is the holding of courts generally (*Phillips* v. *Yates Cent. Nat. Bank,* 98 Kan. 383, L. R. A. 1917A, 680, and note, 158 Pac. 23; *Page County* v. *Rose,* 130 Iowa, 296, 8 Ann. Cas. 114, and note, 5 L. R. A. (n. s.) 886, and note, 106 N. W. 744); $12,500 of the sum was deposited lawfully, pursuant to section 3003, Revised Codes of 1907. An indemnity bond in double that amount had been given to the treasurer. In that case it was conceded that the $12,500 was a general deposit, and the court proceeded upon that assumption. It was not suggested by anybody that the county was entitled to preference as to any part of the total deposit by right of sovereignty.

Having determined that the county may not assert the sovereign right of the state, we conclude that the *Yellowstone County Case* stated the law correctly when it determined that the portion of the county funds lawfully placed in the bank constituted a general deposit. In addition to the cases cited in that opinion, see *Phillips* v. *Yates Cent. Nat. Bank,* 98 Kan. 383, L. R. A. 1917A, 680, and note, 158 Pac. 23; *Otis* v. *Gross,* 96 Ill. 612, 36 Am. Rep. 157; *Retan* v. *Union Trust Co.,* 134 Mich. 1, 95 N. W. 1006.

The funds placed in the State Bank of Ovando by the treasurer were deposited pursuant to section 4767, Revised Codes of 1921, after the bank had been designated a depositary according to law, and had given a good and sufficient bond. The deposit was lawful and by reason thereof the county was merely a general creditor of the bank.

The judgment is reversed. The cause is remanded, with the direction that the district court enter judgment to the effect that the receiver approve the claim of plaintiffs as general creditors of the bank only.

*Reversed and remanded.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.

Rehearing denied February 2, 1924.