STATE ex rel. SCHOOL DISTRICT No. 4, ROSEBUD
COUNTY, Plaintiff, v. McGRAW, County Treasurer,
Defendant.

(No. 5,780.)

(Submitted July 6, 1925. Decided July 18, 1925.)

[240 Pac. 812.]

*Schools and School Districts—School Funds—Deposit in In-
solvent — County Depositories — Liability of County — Man-
damus.*

School District Funds—Deposit With County Treasurer — General De-
posit.
   1.   The effect of the provision of section 1213, Revised Codes of 1921,
   requiring the county treasurer to keep school moneys as a "special
   deposit," is not to make the county a bailee thereof in the sense
   of a deposit for their safekeeping, they to be returned to the
   school district when called for, but is to constitute the deposit a
   general one which, however, must be kept in a special account for
   school purposes.
School Districts Subdivisions of State—Limit of Powers.
   2.   Counties and school districts are subdivisions of the state gov-
   ernment with fixed powers and duties, and any act taken by the
   commissioners of the former or the trustees of the latter must
   be justified by the provisions of the statutes defining and limiting
   their powers.
Same—Deposit of Funds With County Treasurer—Treasurer Agent of
County—Liability of County.
   3.   By the adoption of Chapter 88, Laws of 1913 (now section
   4767, Revised Codes of 1921) and amendment thereof (Chapter 137,
   Laws of 1925), requiring the county treasurer to deposit all "pub-
   lic moneys"—which term includes moneys belonging to a school
   district or other branch of the state government—in his possession
   in county depositories designated by the board of county com-
   missioners, the treasurer becomes the agent of the county in
   handling such funds and he and his bondsmen are relieved from
   liability for their loss occasioned through the failure of the de-
   positories.
Same—County not Relieved from Liability for School Funds by Chap-
ter 128, Laws of 1923.
   4.   *Held,* that the contention that the legislature by the enactment
   of Chapter 128, Laws of 1923, authorizing school districts to issue
   warrants in a stated amount where the banks in which their funds
   had been deposited became insolvent—an emergency measure—
   modified or repealed section 4767, Revised Codes above, so as to
   relieve the county of its liability under that section for funds
   deposited with its treasurer by school districts and by him de-
   posited in county depositories, has no merit.

[74 Mont. 152.]

Same—School Funds Lost in Insolvent Banks—County Liable.

    5.  Under Chapter 137, Laws of 1925, amendatory of section 4767, Revised Codes of 1921, title to moneys deposited by a school district with the county treasurer passes to the county; the moneys become county funds; the county becomes the debtor of the school district and upon redeposit thereof in county depositories is liable to the district for their loss occasioned by such depositories becoming insolvent, such loss being the loss of county and not school district funds.

---

Banks and Banking, 7 C. J., sec. 306, p. 630, n. 98.
Counties, 15 C. J., sec. 1, p. 388, n. 2; sec. 102, p. 456, n. 46; sec. 192, p. 518, n. 73.
Deposit, 18 C. J., sec. 45, p. 580, n. 33; sec. 69, p. 592, n. 1 New; sec. 76, p. 594, n. 42 New.
Pleading, 31 Cyc., p. 333, n. 76.
Schools and School Districts, 35 Cyc., p. 831, n. 79, p. 978, n. 49 New.
Statutes, 36 Cyc., p. 1072, n. 29, p. 1146, n. 14.

Original application for writ of mandate by the State of Montana, on the relation of School District No. 4, Rosebud County, against John McGraw, County Treasurer of Rosebud County.  Writ issued.

*Messrs. Spaulding & McConnell, Mr. Hugh T. Carter* and *Mr. A. W. O'Rourke,* for Relator, submitted a brief; *Mr. C. A. Spaulding, Mr. Carter* and *Mr. O'Rourke* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Angstman* argued the cause orally.

*Mr. Charles H. Loud, Amicus Curiae,* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

A rehearing having been had herein, the original opinion handed down on July 18, 1925, is withdrawn and modified to read as follows:

---

    5.  Right of county or other political subdivision to preference in assets of insolvent bank, see note in 36 A. L. R. 640.

This matter is before us on an original application for a writ of mandate to compel the defendant, as treasurer of Rosebud county, to restore the several funds of the school district, plaintiff, to their ·condition prior to the alteration of his books on May 30, 1925, and to honor and pay warrants regularly drawn on such funds.

To the complaint the defendant has interposed a general demurrer, which admits the truth of all matters properly pleaded in the application. These allegations are that plaintiff was at all times mentioned, and now is, a duly created and existing school district of Rosebud county, and that the defendant was at all such times, and now is, treasurer of said county; that during the past three years, four county depositories, each having on deposit county funds, have been closed by the proper authorities; that on April 30, 1925, the books of the defendant treasurer showed a total credit to plaintiff, distributed to its several funds, of $27,739.29; that on May 30, 1925, the defendant so altered the entries in his said books that more than ninety per cent of this credit was wiped out, which action was taken on direction of the then state bank examiner to all county treasurers to prorate among all funds shown in his books the amount on deposit in each closed depository, and, as payments are received from such banks, to credit each of such funds with its *pro rata* share of such payments.

Counsel for plaintiff contend that: (1) By virtue of the provision of section 1213, Revised Codes of 1921, which requires the treasurer "to receive and hold all school moneys as special deposit," school moneys are a trust fund, and the county stands in the position of bailee thereof; and (2) that, in any event, the county treasurer is the agent of the county in accepting school funds, and therefore that the county is responsible for such funds.

1. The term "special deposit" has a specified meaning in the law, and, to constitute the relation of bailor and bailee,

the deposit must be of some specific thing or sum of money for safekeeping only, and contemplates the return thereof to the depositor or another intact, or a deposit for some specific purpose not contemplating a credit of general account (3 R. C. L. 517), as, for example, the deposit of a package of marked bills to be returned on demand (*Fogg* v. *Taylor,* 109 Me. 109, Ann. Cas. 1913E, 41, 39 L. R. A. (n. s.) 847, 82 Atl. 1008); a sum in gold coin deposited to protect the sureties on a bail bond and to be returned when liability on the bond ceases (*Anderson* v. *Pacific Bank,* 112 Cal. 598, 53 Am. St. Rep. 228, 32 L. R. A. 479, 44 Pac. 1063); money left with a bank to be paid to another on delivery of deed in fulfillment of a land contract (*Kimmel* v. *Dickson,* 5 S. D. 221, 49 Am. St. Rep. 869, 25 L. R. A. 309, 58 N. W. 561); deposit for transmission to another (*Cutler* v. *American Ex. Bank,* 113 N. Y. 593, 4 L. R. A. 328, 21 N. E. 710); the proceeds of a draft for collection and remittance (*State* v. *Ross,* 55 Or. 450, 42 L. R. A. (n. s.) 601, 104 Pac. 596, 106 Pac. 1022).

The manner in which a county treasurer receives, holds (until warrants therefor are presented) and distributes school funds impresses upon them the character of a general and not a special deposit, and the mere ·declaration of the legislature cannot change their nature. The term is used only to declare that the treasurer, as a matter of bookkeeping, cannot mingle the funds with other funds in his hands, but must keep a special account thereof.

2. The county is a subdivision of the state, a body politic [2] and corporate, with certain definite and fixed powers and duties. (Secs. 4293 and 4441, Rev. Codes 1921; *Bignell* v. *Cummins,* 69 Mont. 294, 36 A. L. R. 634, 222 Pac. 797.) The members of the board of county commissioners, acting while in session, are the executive officers of the corporation, with powers and duties definitely fixed by statute. (Sec. 4465, Rev. Codes 1921, as amended by Chapter 95, Laws 1923; *Williams* v. *Board of Commissioners,* 28 Mont. 360, 72 Pac.

755.) These powers are limited by statute, and any action taken must be justified by the provisions of law defining and limiting the powers conferred. (*State ex rel. Lambert* v. *Coad,* 23 Mont. 131, 57 Pac. 1092; *Yegen* v. *Board of County Commissioners,* 34 Mont. 79, 85 Pac. 740; *Hersey* v. *Neilson,* 47 Mont. 132, Ann. Cas. 1914C, 963, 131 Pac. 30.)

Each school district within the county is no less a corporation with definite and limited powers and duties. (Sec. 1022, Rev. Codes 1921; *Finley* v. *School District,* 51 Mont. 411, 153 Pac. 1010.) It has all the necessary and proper authority for its own government, independent of the county; its executive head is its board of trustees, acting in the manner prescribed by law. (Secs. 1005 and 1020, Rev. Codes 1921; *O'Brien* v. *School District,* 68 Mont. 432, 219 Pac. 1113.)

The legislature had the power, had it seen fit, to have provided for a treasurer of each school district and required the county treasurer to pay over to the district treasurer the moneys received for the use and benefit of each district, as it did with respect to cities. (Sec. 5214, Rev. Codes 1921.) Under such a provision plaintiff's contention would be correct; the county treasurer would not be the legal custodian of school district funds as he is not of city funds. (*State ex rel. City of Cut Bank* v. *McNamer,* 62 Mont. 490, 205 Pac. 951.) But evidently for convenience and to do away with the unnecessary duplication and expense, the legislature saw fit to require the county treasurer to perform the duties which would otherwise have fallen upon the district treasurer of each school district within his county (sec. 1213, Rev. Codes 1921), and to further provide, in the general law defining the duties of that officer, that he shall "receive all moneys belonging to the county, and all other moneys by law directed to be paid to him, safely keep the same, and apply and pay them out, rendering account thereof as required by law." (Sec. 4750.) Regarding county funds, he must render his account to the board of county commissioners (sec. 4761), and,

as to school funds, he must account to the county superintendent of schools (sec. 4750, subds. 7 and 9).

Had we no further statute on the subject of the safekeeping of the funds paid into the county treasury, the effect of the foregoing provisions would be to make the county treasurer the custodian of school funds, and, as to them, not the agent of the county, but of the school district and of all other branches of the government whose funds he may have (*Interstate Nat. Bank* v. *Ferguson,* 48 Kan. 732, 30 Pac. 237; *Goodrich* v. *Bashford,* 2 Ariz. 246, 12 Pac. 671; *Lancaster County* v. *State,* 97 Neb. 95, 149 N. W. 331; *Gray* v. *Board,* 93 N. Y. 603; *Commissioners* v. *Springfield,* 36 Ohio St. 643), and to render him and his official bondsmen liable therefor (*Goodrich* v. *Bashford,* above). The authorities cited above were, with one or two exceptions which will be discussed later, decided under statutory provisions similar to those heretofore referred to, and without reference to such a provision as that which we will now consider.

In 1913 the legislative assembly saw fit to entirely change [3] the relation of all parties concerned toward the funds in the county treasury by the enactment of Chapter 88, Laws of 1913, now section 4767, Revised Codes of 1921, which requires the county treasurer to "deposit all public moneys in his possession and under his control" in such banks as "the board of county commissioners shall designate, and no other," after receiving from such banks "such security in public bonds or other securities, or indemnity bonds, as the board of county commissioners * * * may prescribe, approve, and deem fully sufficient and necessary to insure the safety and prompt payment of all such deposits on demand." The section provides that such deposits shall bear interest at the rate of two and one-half per cent per annum, and that "all interest paid and collected on such deposits shall be credited to the general fund of the county." · It concludes: "Where moneys shall have been deposited in accordance with

the provisions of this Act, the treasurer shall not be liable for loss on account of any such deposit that may occur through damage by the elements, or for any other cause or reason occasioned through means other than his own neglect, fraud, or dishonorable conduct.''

Loss through the failure of a bank cannot be attributed to the ''neglect, fraud or dishonorable conduct'' of the treasurer, and it will be seen by a careful reading of the above section that, whereas under the general law the county treasurer is made responsible for the funds in his hands, charged with their safekeeping and liable for their loss, all control over the funds and all responsibility for their safekeeping is by the statute referred to taken from him, and he and his bondsmen are relieved from all liability for the loss of such funds.

3. On rehearing the attorney general, for the first time, contended that school district funds are not ''public moneys'' within the meaning of section 4767. This contention cannot be sustained. The term ''public moneys'' is defined by section 11320, Revised Codes of 1921, to include ''all moneys belonging to the state, or any city, county, town or district therein.'' While this section appears in the Penal Code, ''with relation to each other, the provisions of the four Codes must be construed * * * as though all such Codes had been passed at the same moment of time, and were parts of the same statute'' (sec. 5522, Rev. Codes 1921); and ''whenever the meaning of a word or phrase is defined in any part of this Code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears'' (sec. 8776, Rev. Codes 1921).

Aside from the Code definition and provisions quoted, it is generally held that it is the official character in which moneys are received, and not the ultimate ownership, which makes them ''public moneys.'' (*People* v. *Hamilton*, 3 Cal. Unrep. 825, 32 Pac. 526; *Agoure* v. *Peck*, 17 Cal. App. 759, 121 Pac. 706; *Myers* v. *Board of Commrs.*, 60 Kan. 189, 56 Pac. 11.)

In the first case cited, the court said: "The allegation that these moneys were received by the defendant 'in his official capacity' is the allegation of a fact which conclusively fixes their character as 'public moneys.'" In the second it was held that: "The court then having accepted in its treasury the $1,000 involved and adjudged it to be a money deposit in court, the law requires the clerk to pay the same into the hands of the county treasurer, and the same when received by the treasurer in his official capacity became public money."

There can be no question, then, but what school district funds and other funds of like character coming into the hands of the county treasurer in his official capacity, are "public moneys" within the meaning of the section referred to.

4. On rehearing the attorney general called the attention of [4] the court to Chapter 128 of the Laws of 1923, which had not theretofore been cited or referred to, and contended that this enactment has the effect of a declaration on the part of the legislature as to who shall bear the loss of funds on deposit in an insolvent bank, and thus to repeal or at least modify the effect of section 4767, and that it evinces a clear intention on the part of the legislature that school districts shall bear their *pro rata* share of such loss.

Chapter 128 was enacted as an emergency measure, designed to relieve "a large number of school districts in the state of Montana which will be unable to continue their school operations unless their present financial condition is remedied," *etc.* Section 1 of the Act provides that: "The board of school trustees of any school district in the state of Montana shall have, and are hereby given, *in addition to powers already conferred upon them,* authority, whenever at any time such district shall have all or a part of its funds deposited in any bank which has become insolvent, to issue warrants to the amount of not to exceed one hundred per centum of such funds" for current expenses of the district, and "in case such funds so deposited are not recovered in sufficient

amount to pay off and discharge such warrants and to levy
taxes therefor would be burdensome to such district or would
exceed the limit of taxes permitted to be levied by law, to
issue negotiable coupon bonds therefor and to pledge the
credit and resources of the district for the payment of the
principal and interest of such bonds.''

If it was the intention of the legislature to either repeal
section 4767, or to modify the law as herein declared from the
construction of that section, it would seem that that body
could have found, and would have employed, clear and ex-
pressive phrases in which to couch that intention. Having
failed to do so, it would seem that the enactment discloses
either a misconception on the part of the legislature as to the
position of school districts with reference to their funds and·
an attempt to relieve a nonexisting condition, or an intention
to permit school districts, whose credit with the county is
temporarily impaired by loss of funds through the failure
of the county depository, to meet the emergency by the
issuance of warrants in the manner prescribed, and thereafter,
by the sale of bonds, thus enabling the district to function
until such time as the county is again in a position to respond
to its obligations. It is, however, unnecessary in this proceed-
ing to determine the import and effect of Chapter 128, Laws of
1923, for, whatever its effect upon section 4767, Revised Codes
of 1921, might be, that effect is entirely nullified by more
recent enactments of the legislative assembly.

Chapter 137 of the Laws of 1925 is a re-enactment of section
[5] 4767, modifying the original section only to the extent
of making its provisions applicable to cities and towns as well
as counties, and requiring surety company bonds for the
protection of the ''deposits of county, city and town funds,''
and reducing the rate of interest to two per cent. This en-
actment evidences the understanding on the part of the legis-
lature that all ''public moneys'' deposited as therein required
fall within one or the other of the two classes of funds

named; *i. e.*, they are either "county funds" or city or town
funds. It provides that "it is the duty of the board of
county commissioners in the case of *county funds,* or of the
council in the case of the funds of a city or town" to make a
complete record in their minutes of the acceptance of the
bonds and to reapprove securities quarterly. And again it
provides that "no deposit of funds shall be made or permitted
to remain in any bank, until the security for such deposit
shall have been first approved by the board of county com-
missioners in the case of *county funds,* or by the council in
case of 'city or town funds," and that all interest on such
funds shall be credited to the general fund of the county,
city or town. The Act again exonerates the county treasurer
and his sureties from all liability for loss of funds on his
compliance with the provisions of the Act.

This enactment clearly negatives any intention on the part
of the legislature to modify or repeal section 4767 by the
passage of the bill which became Chapter 128, Laws of 1923,
and if that Act had the effect in law of so doing, Chapter
137, Laws of 1925, has the same effect on that Act.

Again, while the legislative assembly, by the enactment of
Chapter 128, assumed to give to any school district which
has any or all of its funds deposited in any bank which has
become insolvent authority to issue warrants up to 100
per cent of the amount so lost or impounded, and which
cannot then be "in the treasury to the credit of the district"
if the county is authorized to charge off or prorate the loss
with the school district, two years later, in an amendment to
section 964, Revised Codes of 1921, the legislature.declared that,
with certain exceptions which have no application to this
case, "no * * * warrant shall be drawn [by any school
district] unless there is money in the treasury to the credit
of such district." (Chap. 82, Laws of 1925.)

What, then, is the position of the county and of the school
district with reference to school funds under the statute now

controlling; that is, section 4767 as amended by Chapter 137, Laws of 1925?

We now find that the responsibility for the safekeeping of school funds, theretofore imposed upon the county treasurer and his sureties, is entirely removed upon compliance by the treasurer with the requirements of this last enactment on the subject; by this Act the treasurer is made the mere instrumentality of the county for the transfer of all public moneys, which term includes school district funds ·(sec. 1213), irrigation district funds, (sec. 7240), moneys coming into the hands of the public administrator (sec. 10001), and trust funds deposited with the clerk of the district court (secs. 9309 and 10701), from the possession and custody of the treasurer to the county depository, designated by the county, acting through its executive head, the board of county commissioners, and after the approval by that body of the security for its safekeeping by the depository; in neither the act of designation of the depository nor of the approval of the security does the county treasurer nor any school official have any part. The aggregate of all of these funds, with the regular county moneys, is thereupon considered and defined as "county funds," and no one aside from the county is held to any degree of responsibility for their safekeeping or protection as against the county depository; it will also be seen that this burden is not imposed upon the county without recompense, for, under the Act, this "county fund" now bears interest at the rate of two per cent per annum, and the whole thereof, is credited by the county to its general fund,

By a deposit such as is required under our present law, the title to the money so deposited passes to the bank, and the transaction is nothing more nor less than a loan from the county of its funds to the county depository, with a special provision that repayment of the loan shall be made upon demand by the presentation of checks by the creditor (*People* v. *Wilson,* 117 Cal. 242, 49 Pac. 135; *Janin* v. *Bank,* 92 Cal. 14,

27 Am. St. Rep. 82, 14 L. R. A. 320, 27 Pac. 1100; Boone on Banking, 39–41), and by the deposit the county becomes merely a general creditor of the bank (*Bignell* v. *Cummins,* 69 Mont. 294, 36 A. L. R. 634, 222 Pac. 797).

All of the money, therefore, coming into the hands of the county treasurer in his official capacity and thus required to be deposited as directed by the county, becomes county funds, and is by the county loaned to the depository bank at a profit to the county. Thus the funds of the school district, on deposit by the treasurer, lose their identity as school district funds, and all that the school district thereafter has is a credit on the books of the county treasurer for the amount or amounts paid into the county treasury to the credit of the district; the money itself becomes the property of the county, or "county funds," which the county thereupon loans to the county depository for its benefit and profit, and to which the title then passes to the depository, the county being then "merely a general creditor of the bank."

While the county treasurer is the custodian of the school district funds up to the time he makes the deposit, under the law as it now exists, when he complies with the above provisions and while the funds remain in the depository, he is not the custodian thereof, and the relationship of debtor and creditor arises between the school district having a credit with the county, and the county, for, having obtained the money of the district, acquired title thereto, and passed that title on to the depository, the county comes within the definition of a "debtor" found in section 8598, Revised Codes of 1921, and cannot be relieved from its obligation to pay over the money by the loss thereof through no fault of the creditor.

It is apparent, therefore, that any loss suffered by reason of the insolvency of a depository bank is the loss by the county of "county funds," and not of school district or other funds which have been paid into the hands of the county treasurer in his official capacity. It follows that the defendant was with-

out authority to prorate the loss as was attempted, and that the complaint herein states a cause of action.

The demurrer to the complaint is overruled. Let the writ as prayed for issue forthwith.

*Writ granted.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.