MOHRMANN v. FRY.

1. BANKS AND BANKING—RECEIVERSHIP FUNDS—DISTINGUISHED FROM STATE GENERAL FUND.

Funds paid over by bank receiver to State treasurer pursuant to 3 Comp. Laws 1929, § 11959, are different from the general fund of the State-in that they are the property of the depositors and creditors of the bank and subject to the control of the State banking commissioner and the chancery court while the general fund belongs to the State and is under the control of the legislature.

2. SAME—RECEIVERSHIP FUNDS—RELATION OF STATE AND RECEIVER.

The relationship between a bank receiver who has paid over funds to the State treasurer pursuant to 3 Comp. Laws 1929, § 11959, and the latter official is not such that State may not be relieved from liability by showing that the funds are unavailable without any fault on the part of the State treasurer.

3. MANDAMUS—REIMBURSEMENT OF BANK RECEIVER FROM STATE GENERAL FUND.

Mandamus will not issue to compel reimbursement to receiver from general fund of the State for funds paid over by him to the State treasurer pursuant to 3 Comp. Laws 1929, § 11959, which never became a part of the general fund of the State.

POTTER and BUTZEL, JJ., dissenting.

Mandamus by Harry O. Mohrmann, receiver of the Nashville State Bank, against Theodore I. Fry, State Treasurer, and John K. Stack, Jr., Auditor General, to compel reimbursement for receivership moneys paid over to State treasurer pursuant to statute. Submitted December 29, 1933. (Calendar No. 37,415.) Writ denied April 3, 1934. Rehearing denied June 4, 1934.

*Kim Sigler,* for plaintiff.

*Patrick H. O'Brien*, Attorney General, and *Ira Z. Acoff*, Assistant Attorney General, for defendants.

*Walter S. Foster, Wm. S. Cameron, Kelley, Sessions, Warner & Eger, Clayton F. Jennings* and *A. M. Cummins, amici curiæ.*

EDWARD M. SHARPE, J. The Nashville State Bank closed its doors in July, 1931, and in September, 1931, one Edward B. Finley, Jr., became permanent receiver and acted as such until May, 1933, when petitioner was appointed receiver of said bank. The money collected by the receiver was turned over to the State treasurer who in turn deposited the several remittances in five separate banks. All of these banks were closed during the banking holiday of February, 1933. Three of them later reopened and returned to the State treasurer the funds so deposited. The other two banks failed to reopen and there is now on deposit therein the sum of $119,007.39 of money collected by the receiver of the Nashville State Bank.

Each of the accounts in these five banks was opened and carried in the name and official title of "State treasurer as trustee for receiver of Nashville State Bank." The receiver was advised by the treasurer of the precise manner in which each account was opened and was notified monthly by the State treasurer of the amount of accrued interest. The State treasurer at all times kept a separate account of all receivership funds.

January 27, 1933, the circuit judge of Barry county, the court which had appointed the receiver, made an order authorizing and directing the receiver to pay a dividend of 25 per cent. and directing the State treasurer to turn over to the receiver the sum of $188,051.28 with which to pay the dividend. Before

the dividend could be disbursed to the depositors of the Nashville State Bank, the banking holiday was proclaimed by the governor. In April, 1933, the State treasurer paid over to the receiver of the Nashville Bank the sum of $69,043.89, which represented money collected by the State treasurer from the three banks that reopened. July 26, 1933, the circuit judge of Barry county entered an *ex parte* order upon petition of the receiver directing the State treasurer to pay over to the receiver the sum of $119,007.39 from the general funds of the State. Upon the State treasurer's refusal, due to unavailability of funds, to comply with this order, the petitioner applied for a writ of mandamus directing the State treasurer and auditor general to pay to the petitioner the sum of $119,007.39 from the general funds of the State of Michigan.

The defendants contend, first, that this action is in effect a suit against the State and therefore cannot lie; and, second, that the statute does not require the repayment of receivership funds from the general funds of the State.

Under the view we take of the case, it will be unnecessary to discuss the first question.

The banking act (3 Comp. Laws 1929, § 11959) provides that upon the determination of the insolvency of any bank by the State banking commissioner or upon any of certain other named contingencies, application may be made to a competent court for the appointment of a receiver. The receiver may be, though need not necessarily be, a member of the banking department. The receiver is directed to "under the direction of the court, take possession of the books, records, and assets of every description, of such bank, collect all debts, dues and claims belonging to it, and sell or compound all bad or doubtful assets and sell all the real and personal

property of such bank, on such terms as the court shall direct, and may, if necessary, to pay the debts of such bank, enforce all individual liabilities of the stockholders. *Such receiver shall forthwith pay over the money so collected or received to the State treasurer,* and also make report to the commissioner of all his acts and proceedings.''

The payment of dividends is provided for as follows (3 Comp. Laws 1929, § 11962):

''From time to time, under the direction of the commissioner of the banking department, the receiver shall make ratable dividends of the moneys realized or collected by him on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and the remainder of the proceeds, if any, after the costs and expenses of such proceedings and all debts and obligations of the bank are satisfied, shall be paid over to the stockholders of such bank, or their legal representatives, in proportion to the stock by them respectively held; *Provided however,* that the commissioner of the banking department shall cause to be made an examination of the affairs and conditions of any such receivership before directing payment of any dividend or accepting final report, or at any other time he may deem an examination necessary.''

While the statute does not direct the State treasurer how to make disposition of the funds or the method of repayment to the receiver for dividends; yet they have been treated for all practical purposes as special funds in the custody of the State treasurer. Obviously, this was done to distinguish them from the general funds. These funds are different than the general fund in that they are the property of a particular group of people, namely the depositors and creditors of the Nashville State Bank, while the money in the general fund of the State of Michigan belongs to the State. Another distinction

is that the general fund is under the control of the legislative branch of the government while the receivership funds are under the joint control of the State banking commissioner and the chancery court.

It is contended that the case of *Lawrence* v. *American Surety Co. of New York,* 263 Mich. 586 (88 A. L. R. 535), is authority that the State assumed responsibility for such funds paid to the State treasurer and became indebted for the same. But that case also held (263 Mich. at p. 607) that "as among the State, depository, and sureties, the fact that the State has taken possession of moneys pursuant to law is sufficient to constitute them State funds, although they may be held for a special purpose." The *Lawrence Case* did not decide the extent of the State's responsibility for such receivership funds. The State may become responsible to the receiver for such funds without assuming absolute liability for the same. The relationship is not such that the State cannot be relieved from liability by showing that the funds are unavailable without any fault on the part of the State treasurer. To hold otherwise would make the relationship between the State and the receiver one of debtor and creditor.

Since the receivership funds never became part of the general fund of the State, there is no duty upon the part of the defendants to make reimbursement to the receiver from the State's general fund. The writ will accordingly be denied.

NELSON SHARPE, C. J., and NORTH, WIEST, and BUSHNELL, JJ., concurred with EDWARD M. SHARPE, J.

FEAD, J. (*concurring*). Because *Lawrence* v. *American Surety Co.,* 263 Mich. 586, 606 (88 A. L. R. 535), did not directly involve the specific character

of the liability of the State to the receiver, it is not determinative.

Defendant's claim that this is a suit against the State overlooks the fact that, in effect, it is merely a proceeding in a suit by the State.

The State can act only through its officers. Under 3 Comp. Laws 1929, § 11959, the State took and had full charge of bank receiverships. Only State officers, the banking commissioner and the attorney general, could file the petition for receivership. *Stewart* v. *Algonac Savings Bank,* 263 Mich. 272. In making the appointment, the court exercised a statutory jurisdiction, not the inherent power to appoint a receiver which is incidental to original equitable jurisdiction. The power to appoint is a non-judicial function which may be conferred on executive officers. *Robinson* v. *People's Bank of Leslie,* 266 Mich. 178 (92 A. L. R. 1251). So the court made the appointment in the capacity of agent of the State, designated by the legislature for that purpose, rather than as a co-ordinate branch of the government. The degree of control by State officers intended by the legislature is evidenced by the provisions that the court may appoint as receiver only a person "who shall have the recommendation of the banking commissioner;" that the receiver, in addition to his duty to the court, "shall make report to the commissioner of all his acts and proceedings;" that upon appointment of a receiver the commissioner cause notice to be given to creditors to present their claims; that liquidating dividends to creditors are paid by the receiver under direction of commissioner; and that before directing payment of any dividend or accepting any final report the commissioner shall cause an examination to be made of the receivership. The provision that the receiver "pay over all money so

collected or received to the State treasurer" is mandatory. *Moore* v. *Wayne Circuit Judge,* 141 Mich. 398. The court has no custody or control of the funds except in connection with their withdrawal from the State treasury to pay claims.

The circuit court has no jurisdiction to issue a writ of mandamus against a State officer. 3 Comp. Laws 1929, § 15186. This case, then, is merely ancillary to and part of the receivership proceedings because it is brought to require one of the State officers, the treasurer, to perform the duty imposed on him in the liquidation of a State bank. The State having brought the original suit, impliedly consented to the determination of all issues necessary to final liquidation.

Were the statute requiring deposit of funds with the State treasurer an isolated one, designed merely to provide a depository in private litigation, it might with reason be said that the deposit is with a person or an officer and not into the public treasury. But the provision here is a measure adopted by the State to maintain its full control of the liquidation. The State treasurer, named because the receipt and custody of money is his function in State government, takes the fund, not as an individual nor as the person in charge of an office, but in his official capacity as the representative of the State in the same manner that the court, the banking commissioner and attorney general perform their logical functions in behalf of and as agents of the State in the receivership proceedings.

If the fund were public moneys belonging to other governmental subdivisions, deposited with the treasurer under mandate of statute, the State would be liable for its repayment. *People, ex rel. Houghton County,* v. *Auditor General,* 9 Mich. 141; *State, ex*

*rel. School District No. 4, Rosebud County,* v. *Mc-Graw,* 74 Mont. 152 (240 Pac. 812) ; *Myers* v. *Board of County Commissioners of the County of Kiowa,* 60 Kan. 189 (56 Pac. 11). While not in point, it is of interest also that private moneys deposited with public treasurers under statute are held to be public funds for bank deposit purposes and the interest on the deposit belongs to the depositing body. *Spratley* v. *Board of Commissioners of Leavenworth County,* 56 Kan. 272 (43 Pac. 232), (condemnation funds held by county treasurer) ; *Chicago, M. & St. P. R. Co.* v. *Public Utilities Commission of Idaho,* 47 Idaho, 346 (275 Pac. 780), (disputed freight rate collections deposited with the State treasurer).

If a difference is to be made between private and public moneys deposited in the State treasury by command of statute, the rule of common honesty would give preference to the funds of citizens taken by force of law in a proceeding in which the State has assumed full control of them and in which the ultimate owners have no power of custody or control while in possession of the State. Any other rule could result in confiscation.

The practice of the treasurer in handling the fund for convenience in accounting or otherwise cannot affect the liability of the State. The statute does not provide for its segregation or special custody or deposit in any respect. Whether the treasurer keeps the receivership money in cash, mingles it with other funds, misappropriates it to other accounts or deposits it as other State moneys, does not change the responsibility. As it was not tax money raised for special purposes, the only fund into which it could go is the general fund, even though the treasurer might give it a particular name. When the fund

came into the State treasury by command of statute, which also provided for its distribution, there was an appropriation of it by law for its proper purpose, within the meaning of the Constitution, article 10, § 16. It is the duty of the treasurer to pay it out of any available fund.

"If improperly used, so that the treasury should not be in a condition to respond, the claim of the county would not, as suggested on the argument, be extinguished or impaired. It would remain, like all other liquidated demands, a claim payable whenever the treasury is replenished." *People, ex rel. Houghton County,* v. *Auditor General,* 9 Mich. 141, 143.

In its answer to the order to show cause the State avers that the general fund is largely overdrawn and there is no money in the treasury available to pay plaintiff's claim. The averment was not traversed and must be accepted as true. The fact that the general fund is exhausted may mean only that it owes other funds. Presumably moneys are constantly coming into and are being paid out of the general fund. Such moneys are as legally applicable to pay the debt of the State to the receiver as to pay the debt of the general fund to other funds. If it had been shown that such general fund moneys are available to pay plaintiff, a writ of mandamus would be proper. But upon the record as it stands it is undisputed that no money is available to pay plaintiff and I agree that the writ must be denied.

POTTER, J. (*dissenting*). Petitioner asks mandamus commanding defendants to pay him $119,007.39 and for such further order as is just. The facts sufficiently appear in the other opinions filed.

In this country, political power is inherent in the people. It is so recognized and declared by the

Constitution of Michigan. Article 3, section 1. This State possesses all of the powers of any other sovereign national State subject to the express limitations and prohibitions imposed by the Constitution of the United States, and the limitations impliedly resulting from the express delegation of certain sovereign powers by the Constitution of the United States to the national government.

This State can function in its governmental and administrative capacity only through officers and agents. The people, inherently jealous of the power that might be exercised by its public servants,— State officers and agents,—temporarily in office directly or indirectly through the votes of the people, placed constitutional limitations upon their power. Individuals must act for the State, the legislature may enact laws only in pursuance of and not in defiance of the will of the people as expressed in the Constitution. One of the constitutional conditions and limitations imposed by the people upon the exercise of power by the State or any and all of its officers, whether legislative, executive or judicial, is that private property shall not be taken by the public without just compensation therefor being first made or secured in such manner as shall be prescribed by law. Constitution of Michigan, art. 13, § 1. The money here in controversy was taken by the State, ordered by the State to be paid to the treasurer of the State, and if the money may not be recovered from the State or the treasurer of the State it has been taken in express violation of constitutional mandate. The governing statute should not be declared unconstitutional unless imperatively necessary, but should be so construed as to effectuate the beneficial purposes sought to be accomplished thereby.

The government derives its just powers from the consent of the governed. Public powers may be exercised only for the people. No public officer has any authority to exercise any power except that delegated to him by the people through the Constitution. No man in this country is above the law. No officer of the law may with impunity set the law at defiance. "All officers of the government from the highest to the lowest are creatures of the law and are bound to obey it." *United States* v. *Lee,* 106 U. S. 196 (1 Sup. Ct. 240). State banks exercise *quasi*-public powers. They are at all times subject to regulation by the State in the exercise of its police power founded upon the duty of the State to protect its citizens and provide for the safety and good order of society. The police power corresponds to the right of self-preservation in the individual and is an essential element of all orderly government because necessary to its proper maintenance and the welfare of society. It rests upon the power of the State to control and regulate private interests for the public welfare. The legislature of the State is the sole judge of the policy, wisdom and expediency of all statutes enacted by it in the exercise of the police power of the State.

The actual supervision and control of State banks is here vested by the State in the officers of the State who are authorized to investigate the management and conduct of their business, their solvency or insolvency, and take possession of their assets and wind up their affairs whenever it is found necessary to protect the depositors, creditors or others (3 Comp. Laws 1929, § 11898 *et seq.*). A bank is not deprived of title to its assets when the commissioner of banking takes possession thereof because the bank is found by the banking commis-

sioner to be in an insolvent or unsafe condition, but those who engage in the banking business as stockholders, directors or officers equally with those who do business with the bank as depositors do so with full knowledge the State may exercise its inherent power to inspect, control or close and wind up the bank, and no contract, express or implied, between depositors and the bank or between the stockholders of the bank, may interfere with or limit the State in the exercise of its public powers.

Under the banking law (3 Comp. Laws 1929, § 11959), no receiver may be appointed except with the consent and approval of the State by its banking commissioner. Under the present banking law (Act No. 32, Pub. Acts 1933) no receiver may be appointed without the consent both of the banking commissioner and of the governor. In appointing a statutory receiver for a State bank the circuit court in chancery is not exercising its ordinary inherent functions adopted from the old English practice, but is exercising an express administrative function conferred by statute upon it for the administration of the estate of insolvent banks.

Under the practice obtaining in this State, action against an insolvent bank is taken by the State. A receiver may be appointed by the State court in chancery on the recommendation or approval of the State; a receiver appointed is an officer of the State who is accountable to the State. He takes and holds possession of the assets of the defunct bank as a custodian for the State, reduces the bank's assets to possession, enforces the stockholders' statutory liability and performs such other powers and functions as are imposed upon him by the law of the State. When money comes into the hands of the receiver for the defunct bank he is directed by the

State to deposit it with the treasurer of the State where it is to be held until it is paid out by the State on the order of the banking commissioner, supplemented by the judicial order of the circuit court in chancery having jurisdiction of the administration of the affairs of the defunct bank, when the net assets of the insolvent bank are distributed to those whom the State says are entitled thereto.

It is claimed there is no appropriation by the State authorizing the payment of the money in question out of the treasury of the State. If this contention were sound and the identical currency paid to the State treasurer was on hand, it could not be paid out on the order of the commissioner of banking and the order of the circuit court in chancery having jurisdiction of the administration of the bank. The argument proves too much. It hoists its advocates on their own petard. The State treasurer was authorized to receive the money by State law. If there is no appropriation of the money, there was no authority for the State treasurer to receive it. The State treasurer acts in his official capacity. He received the money of the insolvent bank for the State. It makes no difference whether the State directed the money to be deposited with the treasurer of the State of Michigan, or whether the State directed the money to be deposited with the State or with the State treasurer. In any event, the money landed in the State treasury by reason of State action, State authority and State direction. The creditor of a defunct State bank does not keep the books of the treasurer of the State. He has nothing to say about where the money shall be deposited. He has no control over the place of deposit, the liability of sureties or the security taken to insure the repayment to the State treasurer of State money deposited by the State treasurer.

In this case the money was by order of the State, in an action instituted by the State, deposited with the treasurer of the State. The State, by its proper officer, the commissioner of banking, has ordered such money paid out by the State and this executive order has been supplemented by an order and decree of the court having jurisdiction of the administration of the estate of the defunct bank.

Petitioners are entitled to mandamus. The State acted, collected the money from debtors of the bank and perhaps from stockholders of the bank. The State has said the creditors of the bank are now entitled to be paid with the money which the State said should be deposited with the State, held by the State and be paid out by the State on the order of the commissioner of banking.

So far as this case is concerned, the State acts through the State treasurer, the commissioner of banking and the circuit judge. The State treasurer received in his official capacity the money in question. Common honesty dictates he should pay it back on the order of the State by whose order he received it. He who acts for the State in receiving money for the State, to be paid out on the order of the proper officers of the State, cannot refuse to pay out the money upon the orders of the proper State officers without arrogating power to himself superior to that of the State from which he derives all his power and authority.

The State treasurer has no prescribed constitutional duties. His duties are fixed by statute. The moneys in controversy paid to him are public moneys. 1 Comp. Laws 1929, § 358. No treasurer of the State, "shall under any pretext use nor allow to be used any such moneys for any purpose other than in accordance with the provisions of law." 1 Comp. Laws 1929, § 360.

There was no duty resting upon the State treasurer to deposit funds in any depository. He had a right to keep all public moneys in the State treasury. *People* v. *Glazier,* 159 Mich. 528. The Constitution regulates to some extent the deposit by the State treasurer of State moneys and requires an accurate statement of receipts and expenditures of public moneys to be published. Article 10, §§ 15, 17. The creation by the State treasurer of special funds is a matter of convenience in accounting, but these moneys so received are public moneys received by the State treasurer. Money received by the receivers of insolvent banks has been required to be paid to the State treasurer since Act No. 205, Pub. Acts 1887; 2 Comp. Laws 1915, § 8023; 3 Comp. Laws 1929, § 11959. Notwithstanding for more than 40 years the statute has required such money to be so paid, not, so far as I can learn, until the present case, has it ever been even contended a specific legislative appropriation was required to authorize the public moneys so received by the State treasurer to be paid out under the order of the court having jurisdiction of the receiver, when approved and authorized by the commissioner of banking, in accordance with statute.

Section 8026, 2 Comp. Laws 1915, required the receiver of an insolvent bank from time to time to make ratable dividends "under the direction of the commissioner of the banking department." This provision is continued by section 65 of the present banking act. 3 Comp. Laws 1929, § 11962. These statutes should not be technically, but liberally, construed to protect the interests of depositors and creditors. *Stone* v. *Dodge,* 96 Mich. 514 (21 L. R. A. 280). The same statute which empowers the State to receive the money, directs how it shall be paid out

for dividends. To contend that under such circumstances a specific legislative appropriation is necessary for the State to pay out the money which the State received by reason of this statute and is directed by the same statute to pay out upon the order of the proper officer of the State, is equivalent to saying if the State does not pay the money received for a specific purpose and to be paid out for such purpose by the proper officer of the State a statute should be passed to compel it to do so, and, if that statute is disobeyed, the State should pass another statute directing it to comply with the law and so on *ad infinitum*. The order and direction for the paying out of money by the State was made by the proper officer designated by law by the State. This constitutes an appropriation by the State of money in question for a specific purpose. When, as, and if money comes into the treasury of the State, the money due, appropriated by law, and ordered paid by the lawful officer of the State should be paid. This is not a suit against the State but to compel the performance of a statutory duty by the treasurer of the State.

The writ of mandamus should issue, but without costs, the matter being one of public interest.

BUTZEL, J., concurred with POTTER, J.