WYOMING *ex rel.* WYOMING AGRICULTURAL COLLEGE
  *v.* IRVINE, TREASURER OF THE STATE OF WYO-
  MING.

ERROR TO THE SUPREME COURT OF THE STATE OF WYOMING.

No. 272. Argued April 19, 22, 1907.—Decided May 13, 1907.

The land grants made for establishment of agricultural colleges by the act of July 2, 1862, 12 Stat. 503, as amended by the act of March 3, 1883, 22 Stat. 484, and the permanent appropriations for the support of such institutions under the act of August 30, 1890, 26 Stat. 415, were made to the States themselves, and not to any of the institutions established by the States, *Haire* v. *Rice,* 204 U. S. 291, and the disposition of the interest on the land grant fund and the appropriation is wholly within the power of each State acting through its legislature in accordance with

the trust imposed upon it by the acts of Congress, and an institution, although established by the State for agricultural education, cannot compel the payment of any part thereof to it.

THE plaintiff in error, the State of Wyoming, on the relation of the Wyoming Agricultural College and its officers, filed a petition in the Supreme Court of that State for a writ of mandamus against the defendant in error, the state treasurer. The object of the proceeding was to compel the state treasurer to pay to the treasurer of the college certain funds in his hands, being the proceeds of land grants and the amount of appropriations made by Congress for the promotion of education in agricultural and mechanical arts. An alternative writ issued, and the respondent appeared and demurred to the petition. The cause was then heard by the Supreme Court of Wyoming, and by that court the demurrer, which was regarded by court and counsel as sufficiently raising the merits of the controversy, was sustained and judgment rendered for the respondent. The case comes here upon writ of error, with allegations of violations of Federal rights, which, so far as material to the decision, are stated in the opinion.

*Mr. Porter B. Coolidge,* with whom *Mr. Fenimore Chatterton, Mr. Samuel T. Corn* and *Mr. A. E. L. Leckie* were on the brief, for plaintiffs in error:

The act of the legislature of Wyoming in 1905 repealing the charter of the Wyoming Agricultural College is in contravention of the compact and agreement entered into between said State and the United States, in the act admitting said State into the Union.

That act being the solemn compact between the State and the Government, its terms are of controlling force in construing any dubious provisions of the constitution of Wyoming. Section 10 provides that 90,000 acres of land are hereby granted to said State, as provided in the acts of Congress, making donations of land for such purpose.

Section 11 provides that the following grants of land are

hereby made for state, charitable, educational, penal and reformatory institutions to the State of Wyoming, 260,000 acres.

Section 8 provides as to university lands that "the schools, colleges and universities provided for in this act shall forever remain under the exclusive control of the said State, and no part of the proceeds arising from the sale or disposal of any lands herein granted for educational purposes shall be used for the support of any sectarian or denominational school, college or university."

Thus Congress expressly recognizes the university and grants donations for university purposes and expressly recognizes the agricultural college to be thereafter established in this State and grants to the State 90,000 acres of land for the use and support of same. The congressional mind at this time recognized an agricultural college in Wyoming separate and distinct from the university and evinced a fatherly interest in its welfare; and the State of Wyoming in accepting the grant for the use and support of an agricultural college, solemnly obligated itself to establish an agricultural college, which when established could not be destroyed by the legislature.

The State of Wyoming further ratified and reiterated its solemn pledge and obligation contained in the Act of Admission by § 1 of Art. 18 of its constitution, in which it agrees to accept the grants of lands heretofore made, or that may be hereafter made by the United States to the State for educational purposes, for public buildings and institutions and for other objects and donations of money, with the conditions and limitations that may be imposed by the act or acts of Congress, making such grants or donations.

Mr. Timothy F. Burke, with whom Mr. W. E. Mullen, Attorney General of the State of Wyoming, Mr. Nellis Corthell, Mr. Charles W. Burdick and Mr. John W. Lacey were on the brief, for defendant in error:

If the State, by accepting the donations under the Morrill

and other acts, entered into a contract as to their disposition, it is for the United States to complain of the breach if there be any. The relators are not parties to the contract and are in no position to invoke its protection. Again, the appropriation of the funds so donated rests solely in the good faith of the State. Its discretion in disposing of them is not controlled by the conditions prescribed in the acts, as neither a contract nor a trust following the lands or funds was thereby created.

The plaintiff is not a party to the contract, and it is no position to invoke its protection. But, in the second place, the appropriation of the proceeds rests solely in the good faith of the State. Its discretion in disposing of them is not controlled by that condition, as neither a contract nor a trust following the lands was thereby created. *Hagar* v. *Reclamation District No.* 108, 111 U. S. 701, 912; *Mills County* v. *Railroad Companies,* 107 U. S. 557, 566; *Cook County* v. *Calumet &c. Co.,* 138 U. S. 635, 655.

MR. JUSTICE MOODY, after making the foregoing statement, delivered the opinion of the court.

The Wyoming Agricultural College was established by an act of the legislature of that State. Chap. 92, S. L. Wyo. 1890–91. It was declared to be "a state public educational institution," with the object of giving to men and women, without regard to color, "a liberal education and a thorough knowledge of such arts and sciences as will aid in the prosecution of agricultural pursuits, with their varied applications."

The University of Wyoming was established by the Territory with the declared object of providing education for both sexes in "the different branches of literature, the arts and sciences, with their varied applications." The constitution of the State of Wyoming confirmed the establishment of the university and declared it to be the University of the State of Wyoming. The first session of the state legislature enacted a law declaring more fully the objects of the university, which

provided, among other things, that it should be open to both sexes, regardless of race or color, and should "embrace colleges or departments of letters, of science and of the arts. . . . The college, or the department of the arts, shall embrace courses of instruction in the practical and fine arts, especially in the application of science to the arts of mining and metallurgy, mechanics, engineering, architecture, agriculture and commerce, together with instruction in military tactics."

Land grants and appropriations, which presently will be described in detail, have been made by Congress for the support of education in the State, and the State, acting through its legislature, has accepted the appropriations under the conditions prescribed in the acts of Congress, and has appropriated these national bounties to the support of the university. The agricultural college claimed that under the acts of Congress bestowing these gifts it is entitled to them, and the denial of the Supreme Court of the State of this claim raises the Federal question first to be considered.

By the act of July 2, 1862 (12 Stat. 503), amended by act of March 3, 1883 (22 Stat. 484), Congress "granted to the several States, for the purposes hereinafter mentioned, "certain quantities of the public lands, or, under certain conditions, in lieu thereof land scrip. The entire proceeds of the sale of the land or of the land scrip were directed to be safely invested by the States as a perpetual fund, whose interest should be "inviolably appropriated by each State, which may take and claim the benefit of this act, to the endowment, support and maintenance of at least one college, where the leading object shall be, without excluding other scientific and classical studies, and including military tactics, to teach such branches of learning as are related to agricultural and the mechanic arts, in such manner as the legislatures of the States may respectively prescribe, in order to promote the liberal and practical education of the industrial classes in the several pursuits and professions in life." The act further provided that "if any portion of the fund invested is lost, it shall be replaced by the State to which

it belongs;" and that "no State while in a condition of rebellion or insurrection against the Government of the United States shall be entitled to the benefits of this act, and no State shall be entitled to the benefit of this act unless it shall express its acceptance thereof by its legislature."

The grant made in this statute is clearly to the State and not to any institution established by the State. *Haire* v. *Rice*, 204 U. S. 291.

By the act of August 30, 1890 (26 Stat. 417), Congress made permanent annual appropriations of a certain sum of money "to each State and Territory for the more complete endowment and maintenance of colleges for the benefit of agriculture and the mechanic arts, now established, or which may be hereafter established, in accordance with an act of Congress approved July second, eighteen hundred and sixty-two, . . . to be applied only to instruction in agriculture, the mechanic arts, the English language, and the various branches of mathematical, physical, natural and economic science, with special reference to their applications in the industries of life, and to the facilities for such instruction." It is so obvious that these appropriations are made to the State and not to any institutions within the State, and that the States, acting through their legislatures, are to expend the appropriations in accordance with the trust imposed upon them, that it is unnecessary to quote the numerous expressions in this act which support that view. By the act of March 2, 1887 (24 Stat. 440), Congress directed that a certain sum should be annually appropriated "to each State" for the support of agricultural experiment stations at the institutions established under the act of 1862. The law provides that the appropriation shall be paid to the treasurer of the institution where the agricultural experiment station is established, and no money has come or will come into the hands of the state treasurer. It is, therefore, unnecessary to consider further the provisions of this act. There is in the hands of the state treasurer the permanent fund established under the act of 1862, and one of the annual

appropriations paid to him under the act of 1890. The interest on the fund and the annual appropriation the state treasurer is about to pay to the University of Wyoming in obedience to the laws of the State. The agricultural college claims that it is entitled under those statutes to receive this money. If this claim fails it is the end of the case. But, as has been shown, both the fund and its interest and the annual appropriations are the property of the State and not of any institution within it. The agricultural college shows no title or right to this money under these statutes. The whole case of the plaintiff in error fails at the threshold, and it is unnecessary to determine whether the State has complied with its trust in bestowing the Government bounty upon the University of Wyoming or has violated the obligation of a contract by repealing, as it has, the act establishing the agricultural college. These questions were discussed with learning and ability in the court below, and we do not intend to intimate any disagreement with the conclusions of that court. But as the plaintiff in error must fail in the attempt to compel the payment to it of the money in the hands of the defendant for the reasons already given, there is no need to go further in this court, and the judgment of the Supreme Court of Wyoming is therefore

*Affirmed.*