**In re Application of STATE of Oklahoma ex rel. DEPARTMENT OF TRANSPORTATION, for a Determination of the Constitutionality of the Railroad Revitalization Act and Certain Programs of Assistance of Railroads Contemplated Thereunder.**

No. 55257.

Supreme Court of Oklahoma.

March 12, 1982.

As Corrected March 16, 1982.

Rehearing Denied June 22, 1982.

---

Floyd W. Taylor, Preston L. Pulliam, Oklahoma City, for Dept. of Transp., petitioner.

Jan Eric Cartwright, Atty. Gen., Manville T. Buford, John F. Percival, Asst. Attys. Gen., Oklahoma City, for Atty. Gen. of Okl., respondent.

David Hudson, Oklahoma City, amicus curiae, for State of Okl. ex rel. the Honorable George Nigh, Governor.

William A. Thie, Dallas, Tex., Charles Nesbitt, Oklahoma City, amici curiae, for Missouri, K. & T. R. Co.

OPALA, Justice:

The object of this proceeding is to test the constitutionality of the Oklahoma Railroad Revitalization Act [Act]. Two issues are presented for decision: [1] Do federal or private funds, when deposited in the state treasury in furtherance of programs under the Act, become *ipso facto* state funds? and [2] Is state involvement in the railroad rehabilitation programs under the Act constitutionally permissible? We hold that (a) private and federal funds, when held by the state in its custodial capacity, retain their original legal character until they can be expended for the purposes specified by the Act, and (b) federal and private funds may be expended for programs contemplated by the Act without offending any state constitutional proscriptions. Additionally, we pronounce that state funds may also be used for the purchase of rail properties or for rehabilitation of state-owned rail prop-

erties. With respect to the controversy over use of state funds for programs which benefit railroads that are not owned by the state, the tendered dispute cannot be resolved. That issue is found not to be ripe for judicial review.

The Oklahoma Department of Transportation [Department] sought a declaration from this court of the validity of the 1978 Railroad Revitalization Act [1] and a determination of its authority and responsibilities under that legislation. Acting in the exercise of powers conferred by Art. 7 § 4, Okl.Const., this court assumed original jurisdiction of the case.[2]

One of the Department's goals in this litigation is to secure a pronouncement upholding its authority to spend federal and private funds for the benefit of non-state-owned railroads. These funds stand deposited in the state treasury in furtherance of programs contemplated by the Act. We are called upon to determine not only the constitutionality of the Act but also the validity of "the programs of assistance to railroads contemplated thereby". Since at the inception evidentiary hearings appeared necessary to resolve the ultimate issues brought here for adjudication, this cause was initially transferred to the district court (Oklahoma County) with directions to conduct all necessary hearings and to prepare appropriate findings of fact and conclusions of law. After the trial judge's decision was rendered and exceptions were passed on by him, the cause came back to this court.

The state act under consideration was adopted in order to take advantage of the National Railroad Revitalization and Regulatory Reform Act of 1976.[3] The federal act, the regulations promulgated pursuant to it, and state law combine to create a number of delivery systems for assisting distressed railroads. There are basically three methods for effecting contemplated assistance. These are: (1) the rehabilitation of roadbeds and associated facilities, (2) the availability of rail service continuation payments and (3) the actual acquisition by the state of rail properties. The various mechanisms of assistance are available either singly or in combination with one another. For each form of assistance, federal, state and private funds [4] are available through a federal-local matching system.[5]

I.

## THIS CASE PRESENTS A JUSTICIABLE CONTROVERSY

The Attorney General contends that the Department does not have standing in this proceeding nor is there a justiciable controversy presented. He argues that since the parties who stand to benefit by the Act are the railroads, only they have standing to maintain the action. The argument that no justiciable controversy exists is based on the absence of a plan or program by which the Department will seek to offer aid to non-state-owned railroads. Without a specific program, the Attorney General argues, we would be merely giving an advisory opinion based on hypothetical facts.

 To be a proper subject for adjudication, a controversy must be "justiciable",

---

1. 66 O.S.Supp.1978 § 302.1 et seq.

2. The Department may have sought to invoke the provisions of 66 O.S.Supp.1980 § 304.1 which authorize it to proceed in this court for a determination of the Act's constitutionality. When assuming jurisdiction of the case we elected to act in the exercise of our constitutional power of superintendence. Art. 7 § 4, Okl.Const.

3. P.L. 94–210 § 803 (codified at 49 U.S.C. 1654(f–p). Implementing federal regulations are found at 49 C.F.R. 266.

4. Federal funds may be appropriated by Congress under the National Railroad Revitalization Act. State funds are of two types (a) general revenues and (b) funds from the Oklahoma Railroad Maintenance Revolving Fund (66 O.S.1981 § 309). The latter includes revenues generated by the provisions of 68 O.S. 1971 § 2201 et seq. Private funds consist of those voluntarily contributed by shippers and/or rail companies.

5. These funds can be combined for use in any of the following ways: (a) 70% federal and 30% private, (b) 70% federal and 30% state and private or (c) 70% federal and 30% state.

that is, appropriate for judicial inquiry. Included within the rubric of "justiciability" is a controversy which is (a) definite and concrete, (b) concerns legal relations among parties with adverse interests and (c) is real and substantial so as to be capable of a decision granting or denying specific relief.[6] As an aspect of justiciability, "standing" focuses on the party seeking to get his complaint before the court and not on the issues tendered for determination. In standing problems the inquiry posed is whether the party invoking the court's jurisdiction has a legally cognizable interest in the outcome of the tendered controversy.[7]

■ In the case at bar, the parties have adverse legal interests. The Department bears certain legal responsibilities which stand imposed upon it by the Act. The opinions of the Attorney General pose a legal impediment to the Department's efforts to implement the Act. The hurdle cannot be overcome without judicial intervention because public officials act at their peril when they disregard an opinion by the Attorney General. This court's powers must be invoked to determine whether the opinions of the Attorney General are a valid legal obstacle to the Department's expenditure of funds. The absence of a specific program presents no legal obstacle to a decision from this court on the issue whether federal and private funds may be expended. As discussed later in Part II, since these funds do not become "state funds" after being deposited in the state treasury and hence are not subject to the constitutional proscriptions the Attorney General invokes, we need not be concerned here with how these funds will be expended.

In this controversy we had the choice of assuming jurisdiction or allowing the Department to litigate its case in the district court. We determined that the matter was fit for adversarial testing in this forum because of the *publici juris* nature of the controversy and the pressing need for resolution of the issue. Inasmuch as this court is not equipped to function as a *nisi prius* forum, the district court was cast in the role of a referee in case evidentiary proceedings became necessary.[8]

## II.

### THE STATUS OF FEDERAL AND STATE FUNDS WHICH STAND DEPOSITED IN THE STATE TREASURY

■ The Attorney General contends that both federal and private funds, when accepted by the Department and deposited in the state treasury, become state funds subject to the proscriptions of Art. 10 § 15, Okl.Const. This is also the view he expressed in three of his opinions in which the Department was cautioned that disbursement of federal or private funds to any "company, association or corporation" was a violation of the proscriptions in Art. 10 § 15, Okl.Const.[9] We reject this view.

■ Federal money deposited in the state treasury pursuant to some grant-in-aid program is held in trust for a specific purpose. Like other custodial funds, it retains its original legal character.[10] The leg-

**6.** *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–242, 57 S.Ct. 461, 464–465, 81 L.Ed. 617 [1937]; *Hatfield v. King*, 184 U.S. 162, 22 S.Ct. 477, 46 L.Ed. 481 [1902]; *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 324–325, 56 S.Ct. 466, 472–473, 80 L.Ed. 688 [1936].

**7.** *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 [1962]; *Flast v. Cohen*, 392 U.S. 83, 100, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 [1968]; *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 [1980].

**8.** There is precedent for utilizing the district court in this manner. In a 1945 habeas corpus proceeding we cast the district court in the referee's role. *Ex parte Brink*, 196 Okl. 361, 162 P.2d 604 [1945].

**9.** Atty.Gen.Op. 79–108, 79–299 and 79–44. The terms of Art. 10 § 15, Okl.Const. provide: "The credit of the State shall be not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State * * *".

**10.** *State ex rel. Watson v. Caldwell*, 156 Fla. 618, 23 So.2d 855, 857 [1945]; *Friedman v. American Surety Co. of New York*, 137 Tex.

islature wields *no* authority over such funds. It may not subvert congressional policy by diverting the money to another purpose.[11] Once accepted by the state, federal funds stand burdened with a trust which follows them from the moment of the deposit. Private funds, when accepted by and paid into the state treasury for the purpose of matching federal funds, become similarly burdened with the very same trust terms. This is so because the conditions of the federal grant also affect, and impress themselves upon, the expenditure of matching funds.[12]

The terms of 62 O.S.Supp.1979 § 41.8, cited by the Attorney General as authority for his position, provide that federal funds deposited in the state treasury "shall be subject to the other fiscal controls" in the budget act. This phrase doubtless refers to a course of procedure which governs the state treasurer—as custodian of the fund—in keeping records and making payments to claimants. The agency responsible for receiving and disbursing the funds does not, by virtue of this procedure, lose control over the federal funds for which it is responsible, nor over the manner in which they are expended or managed.

When this cause was initially commenced here, the terms of Okla.Sess.L.1980, Ch. 349 § 17[13]—the statute then in force— prohibited the Department "from contributing to, subsidizing, or giving away *any real*

*or personal property* to a railroad or any other association that is not owned by the State of Oklahoma". [Emphasis added]. The quoted interdiction was withdrawn and excised from the law when it was left out of the version passed in 1981. The 1981 Act, which re-enacted, with major enlargements, nearly all the provisions of the prior Act, was doubtless intended to be all-inclusive. It contained a repealer of "all laws or part of laws in conflict herewith".[14] Thus the 1981 Act presently in effect does *not* contain a restriction on the use of state funds in the programs to be launched. We so hold.

## III.

## THE CONSTITUTIONALITY OF RAILROAD REVITALIZATION ACT

Central to the controversy before us is the issue whether the expenditure of state funds for the programs contemplated by the Act is interdicted by the "public purpose" requirement of Art. 10 § 14, Okl. Const.,[15] or stands proscribed by Art. 10 § 15, Okl.Const. because it constitutes an impermissible "gift" in the form of appropriation of tax money for the benefit of a private entity.

Since we have determined, in Part II, that federal and private funds deposited in the state treasury under this Act retain

---

149, 151 S.W.2d 570, 578–579 [1941]; *Ross v. Gross*, 300 Ky. 337, 188 S.W.2d 475, 477 [Ky. App.1945]; *Mohrmann v. Fry*, 266 Mich. 422, 254 N.W. 153, 154 [1934].

11. *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 [1968]; *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 [1971]; *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 [1972]; *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 [1970].

12. *State ex rel. Spencer Lens Co. v. Searle*, 77 Neb. 155, 109 N.W. 770, 771 [1906]; *State ex rel. Ledwith v. Brian*, 84 Neb. 30, 120 N.W. 916, 919 [1909]; *Melgard v. Eagleson*, 31 Idaho 411, 172 P. 655, 656 [1918]; *Wyoming ex rel. Wyoming Agricultural College v. Irvine*, 206 U.S. 278, 27 S.Ct. 613, 51 L.Ed. 1063 [1907]; *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 524

P.2d 975, 986 [1974]; *MacManus v. Love*, 179 Colo. 218, 499 P.2d 609, 610 [1972].

13. This section was carried into our statutes as 69 O.S.Supp.1980 § 4016. It was amended again in 1980 by the First Extraordinary Session, Ch. 2 § 4 (69 O.S.Supp.1980 § 4016) to prohibit the Department from "contributing to, subsidizing, or giving away any real or personal property to a railroad or any other entity that is not owned by the State of Oklahoma or a political subdivision thereof."

14. Okla.Sess.L.1981, Ch. 214 § 4. This Act amended 66 O.S.Supp.1980 §§ 304, 304.1 and 309.

15. The terms of Art. 10 § 14, Okl.Const. provide in pertinent part: "Taxes shall be levied and collected by general laws, and for public purposes only * * *."

their original legal character until expended, it is clear that the use of the federal/private funds combination for assistance to a railroad is not subject to the §§ 14 and 15 proscriptions. Neither do these constitutional clauses apply to the expenditure of state funds for the acquisition or rehabilitation of state-owned rail property.

What now remains to be considered is whether it is constitutionally permissible for state-generated funds to be used for payment of assistance to non-state-owned railroads in the program designed to ensure continued rail service in areas of the state where rail trackage may be abandoned.

Among the Department's powers and responsibilities under the Act are (a) the authority to rehabilitate non-state-owned railroad property and (b) the provision of rail service continuation payments for operating losses sustained on a line which may otherwise be abandoned or which may experience that reduced level of service which is not in the public interest. The terms of an agreement for assistance to non-state-owned entities must be in writing. The assistance may be rendered with federal, state or private resources in the form of money, property, labor or other things of value. These resources can only be spent for the purposes specified under the Act. The Act also delegates to the Department authority to make rules and regulations—consistent with state statutory and constitutional law and in compliance with the requirements of federal agencies which administer applicable federal laws or which have funds available for the Department under the Act.

▆▆ Insofar as the Act under consideration authorizes expenditures of state-generated revenue for use of non-state-owned railroads, its constitutional validity cannot be assayed in this proceeding. For the following reasons the controversy over that issue is not justiciable:

[1] The standards and parameters of legislative policy to be implemented by administrative rules and regulations are yet to be articulated.[16]

16. *Oliver v. Oklahoma Alcoholic Beverage Con-*

[2] No administrative rules and regulations have been, nor can they be, promulgated at this time.

[3] No structured program under the Act, which is conformable to the adopted rules and regulations, is tendered for adversarial testing.

[4] The Act cannot be implemented at this time because there has been no legislative funding for any programs to be structured under some well-articulated legislative policy that is capable of being translated into action through a framework of administrative rules.

Though tendered here for our declaration of rights, the remaining issues must be left unadjudicated. They lack the necessary attributes of justiciability.

IRWIN, C. J., BARNES, V. C. J., and LAVENDER, DOOLIN and WILSON, JJ., concur.

HODGES, J., concurs in Parts I and II and dissents from Part III.

SIMMS and HARGRAVE, JJ., dissent.

*trol Board*, Okl., 359 P.2d 183, 187–189 [1961].