Dear Randall Erwin,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask the following question:
Does the Oklahoma Employment Security Commission haveauthority under Oklahoma law to expend Workforce Investment ActBlock Grant funds without State legislation?
¶ 1 Your letter requesting this Opinion cites three statutory and constitutional provisions relating to your concerns about the State's expenditure of federal block grant funds received under the Workforce Investment Act of 1998 ("the Act"). See Pub.L. No. 105-220, 112 Stat. 936 (codified as amended in scattered sections of 20 U.S.C. and 29 U.S.C.). These laws include: 1. Section 191 of the Act, 29 U.S.C. § 2941(a) (1999), (providing that State legislation regarding implementation of the Act is not prohibited and authorizing appropriation of the funds by the State legislature); 2. Okla. Const. art. V, § 55 (requiring appropriation of State funds prior to expenditure); and 3. 62O.S. Supp. 1999, § 41.13a[62-41.13a] (preventing expenditure of block grant funds without authorization, appropriation or other formal expression of legislative intent). Each of these provisions will be addressed in turn following a brief review of the Act.
 I. Workforce Investment Act of 1998 — Overview
¶ 2 The Act was designed to coordinate and improve employment, training, literacy, and vocational rehabilitation programs. See
Pub.L. No. 105-220, 112 Stat. 936 (codified as amended in scattered sections of 20 U.S.C. and 29 U.S.C.).[1] Title 1 of the Act replaces the Job Training Partnership Act of 1982, effective July 1, 2000 and creates State and local workforce investment systems in every State to provide services for youth, adults, and dislocated workers. See 29 U.S.C. §§ 2801-2945
(1999). The Act sets out in detail the manner in which grant funds are to be allocated among states and within states. See29 U.S.C. §§ 2862, 2863 (1999).
¶ 3 Each State Governor is required to designate local workforce investment areas (see 29 U.S.C. § 2831(a) (1999)) and to establish a State workforce investment board to assist in the development of the State plan (see 29 U.S.C. § 2821(a) (1999)). The Act requires each local area to have a local workforce investment board, which is to develop a local plan for establishing a one-stop delivery system to provide information and access to job training, education, and employment services at a single local location. See 29 U.S.C. §§ 2832(a), 2833(a),2841(a) (1999). The Oklahoma Employment Security Commission[2] has been designated the State grant recipient and administrative agency for Title 1 of the Act pursuant to the "Strategic Five-Year State Workforce Investment Plan," the State plan submitted by the Governor as required by 29 U.S.C. § 2822
(1999). See 40 O.S. Supp. 1999, § 4-702[40-4-702](2).
 II. State Legislation Authorized by the Act
¶ 4 The Act authorizes State legislation as follows:
 Nothing in this chapter shall be interpreted to preclude the enactment of State legislation providing for the implementation, consistent with the provisions of this chapter, of the activities assisted under this chapter. Any funds received by a State under this chapter shall be subject to appropriation by the State legislature, consistent with the terms and conditions required under this chapter.
29 U.S.C. § 2941(a) (1999).
¶ 5 The above language makes clear that State legislation implementing the Act is not prohibited; however, State legislation is not required by the Act as a condition for receipt or disbursement of funds. Likewise, funds received by a State are subject to appropriation, but nothing in the Act requires State legislative appropriation to expend the funds granted under the Act.
 III. Okla. Const. art. V, § 55.
¶ 6 You have asked whether the Oklahoma Constitution, ArticleV, § 55 requires the Legislature to appropriate workforce investment grant funds received from the federal government before those funds may be expended by the Oklahoma Employment Security Commission. This section states:
 No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.
Okla. Const. art. V, § 55.
¶ 7 Article V, § 55 vests the function of appropriating public funds exclusively in the Legislature. See In re InitiativePetition No. 332, 776 P.2d 556, 557 (Okla. 1989). An appropriation is "an authority of the Legislature given at the proper time and in the legal form to the proper officers, to apply a distinctly specified sum, from a designated fund out of the treasury in a given year for a specified object or demand against the State." Id. at 558. In construing Article V, § 55, the Oklahoma Supreme Court has distinguished trust funds, which are not subject to legislative appropriation, from State funds.See id; see also City of Sand Springs v. Department of Pub.Welfare, 608 P.2d 1139, 1150 (Okla. 1980) ("Constitutional provisions as to appropriations do not apply as to special funds devoted to special purposes."); State ex rel. Hawkins v.Oklahoma Tax Comm'n, 462 P.2d 536, 539 (Okla. 1969) (constitutional appropriation provisions do not apply to special or trust funds).
¶ 8 As Article V, § 55 does not apply to special or trust funds, it is necessary to determine the nature of federal block grant funds to determine whether they are required to be appropriated pursuant to the State Constitution. The only Oklahoma case dealing specifically with the appropriation of federal funds is Woods v. State Bd. of Equalization,517 P.2d 430 (Okla. 1973), which addressed the question of whether federal revenue sharing funds were properly included in the State Board of Equalization's estimate pursuant to Okla. Const. art. X, § 23.[3] The Petitioner who challenged the inclusion of the funds in the estimate argued that the State receives numerous federal grants that had never been included in the State Board's estimate. See Woods, 517 P.2d at 432. However, as the Court pointed out, the federal revenue sharing statute provided that revenue sharing funds were to be expended in the same manner as a State's own revenue.[4] See id. at 431. The Court noted that the federal Revenue Sharing Act of 1972 is not an allocation of revenues to a State for a specified purpose; rather, the funds received by the State are to be spent as determined by the Legislature and can only be spent by legislative appropriation.Id. at 432. Therefore, funds received by the State under the Revenue Sharing Act were subject to appropriation under Article V, § 55 and to inclusion in the State Board of Equalization's estimate pursuant to Article X, § 23. See id. at 432.
¶ 9 In Attorney General Opinion 79-356 this Office determined that federal funds received by the State under the federal Revenue Sharing Act of 1972 were subject to State appropriation under Article V, § 55. See A.G. Opin. 79-356. The Opinion related solely to unrestricted funds and did not address "funds over which the federal government exerts control after payment to the state by directing the manner in which those funds are allocated." Id. Unrestricted federal funds, such as those received by the State under the federal Revenue Sharing Act, are subject to legislative appropriation. See Okla. Const. art. V, § 55.
¶ 10 Whether federal funds are required to be appropriated pursuant to Article V § 55 depends upon the nature of the funds; that is whether they are unrestricted, such as federal revenue sharing funds, or are custodial or trust funds. Although not specifically addressing Article V, § 55, State ex rel.Department of Transportation, 646 P.2d 605 (Okla. 1982), does address the character of federal funds held by the State. The case held that federal funds, when held by the State in its custodial capacity, retain their original legal character until they can be expended for the purposes specified by federal law, and federal funds may be expended for programs contemplated by federal law without offending any state constitutional proscriptions. See id. at 607. The Attorney General had contended that federal funds, when accepted by the Department of Transportation and deposited in the State treasury, became State funds subject to the proscriptions of Article X, § 15 of the Oklahoma Constitution, prohibiting gifts. See id. at 609. The Court, in ruling that federal funds were not subject to State constitutional provisions, stated:
 Federal money deposited in the state treasury pursuant to some grant-in-aid program is held in trust for a specific purpose. Like other custodial funds, it retains its original legal character. The Legislature wields no authority over such funds. It may not subvert congressional policy by diverting the money to another purpose. Once accepted by the state, federal funds stand burdened with a trust which follows them from the moment of the deposit.
Id. at 609-10 (emphasis added).[5]
¶ 11 In construing Section 41.8 of Title 62, which makes federal funds in the State Treasury subject to State fiscal controls, the Court found that this provision refers to the procedure which governs the State Treasurer as custodian of the fund in keeping records and making payments to claimants. Seeid. at 610. "The agency responsible for receiving and disbursing the funds does not, by virtue of this procedure, lose control over the federal funds for which it is responsible, nor over the manner in which they are expended or managed." Id.
¶ 12 Both Woods and Attorney General Opinion 79-356 dealt with unrestricted federal funds, which the Legislature could appropriate and expend on any program or activity. Like the transportation funds in Department of Transportation, the block grant funds at issue here are restricted to specifically designated activities involving workforce investment. They are custodial, rather than unrestricted. The Act authorizing the workforce investment grants specifies the purposes for which the State is to utilize the funds and the restrictions placed on the use of the funds by the federal government. Block grants do not include the unrestricted spending feature of the federal revenue sharing program. See Colorado Gen. Assembly, 738 P.2d at 1173. "Block grants" fall between the extensive federal control represented by categorical grants and the absence of federal control represented by revenue sharing; they were designed to allow states discretion in designing programs, reduce administrative requirements, distribute funds on the basis of a statutory formula, and provide specific eligibility provisions.See id. at 1159.
¶ 13 Oklahoma Constitution Article V, § 55 does not apply to federal funds received under the Workforce Investment Act because the funds are custodial, rather than unrestricted, and are thus not subject to the constitutional provisions requiring the appropriation of State funds.[6] See City of SandSprings, 608 P.2d at 1150; Department of Transp., 646 P.2d
at 607.
 IV. 62 O.S. Supp. 1999, § 41.13a[62-41.13a]
¶ 14 You have also asked whether 62 O.S. Supp. 1999, § 41.13a[62-41.13a]
requires State legislation before an agency can expend federal block grant funds. Section 41.13a provides as follows:
 No state agency or entity shall commit or expend any funds from federal block grant funds created after the effective date of this act, including, but not limited to, employment, job training, vocational education, vocational rehabilitation, adult education or literacy programs without:
1. Prior authorization;
 2. Appropriation of the funds by the Legislature as provided in Section 23 of Article 10 of the Oklahoma Constitution;[7] or
3. Other formal expression of legislative intent.
Id.
¶ 15 In construing statutes, the legislative intent governs, and to arrive at that intent, the entire act must be considered, together with all other enactments upon the same subject. SeeCurtis v. Registered Dentists of Okla., 143 P.2d 427, 429
(Okla. 1943). Under the rule of construction of statutes in parimateria, statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a connected system. SeeCornell v. Sherrer, 397 P.2d 105, 108 (Okla. 1964). Therefore, Section 41.13a must be construed in conjunction with other statutes relating to the State's expenditures of federal funds, including statutes providing for legislative oversight of such expenditures.
¶ 16 Section 41.13a is a 1995 amendment to the Oklahoma Budget Law of 1947, 62 O.S. 1991 Supp. 1999, §§ 41.1-41.47. See
1995 Okla. Sess. Laws, ch. 340, § 24. As noted in the previous section, federal funds in the State treasury are subject to State fiscal controls. See 62 O.S. Supp. 1999, §§ 41.8[62-41.8] (federal funds shall be deposited in the State Treasury and shall be subject to the other fiscal controls imposed by the Budget Law unless federal law provides otherwise); 41.9 (appropriations and/or federal funds shall be allotted for each agency by use of a line item method); 41.13 (agencies receiving revenues from sources other than legislative appropriations must file requests for allotments under the same provisions required for direct legislative appropriations for approval by the Budget Director).
¶ 17 Section 41.13a adds an additional requirement upon agencies for expenditures of federal block grant funds; that is, such funds may not be expended unless one of the following conditions has been satisfied: prior authorization, appropriation, or other formal expression of legislative intent.See id. It is not clear what is meant by "prior authorization" in terms of who has to make the authorization; however, since the final alternative in the section, "or [o]ther formal expression of legislative intent[,]" refers to a legislative action, "[p]rior authorization" would appear to mean authorization by the Legislature. Id. § 41.13a(1), (3).
¶ 18 The question presented is whether legislation is necessary prior to expenditure of federal block grant funds. Legislation is required for an "appropriation" but is not the sole method of satisfying the other alternative conditions for the expenditure of federal funds. "Prior authorization" or "other formal expression of legislative intent" may include actions other than legislation, such as a resolution[8] or an action taken pursuant to Section 452.7 of Title 74, which authorizes the Joint Committee on Federal Funds ("Committee") to approve or amend state plans, such as the State Plan required under the Workforce Investment Act.[9] See 74 O.S. 1991, § 452.7(C).This section also provides that no agency may apply for federal financial assistance or expend federal block grant funds after Committee action to amend or disapprove. See id. The Legislature also has oversight over federal block grant funds pursuant to Section 452.8 of Title 74, which authorizes the Legislature to hold public hearings on the proposals submitted by state agencies for use of federal block grant funds and to refer the proposals to committees to make findings and recommendations on the proposals. See 74 O.S. 1991, § 452.8[74-452.8](A), (C). Such findings and recommendations could also qualify as "formal expression[s] of legislative intent."
¶ 19 The Legislature has taken two formal actions in regard to the Workforce Investment Act: (1) a concurrent resolution during the 1999 legislative session (See H. Con. Res. 1021, 47th Leg., 1st Reg. Sess. (Okla. 1999); 1999 Okla. Sess. Laws 2120) and (2) passage of the Oklahoma Workforce Investment Act during the 2000 session (see H.B. 1967, 47th Leg., 2d Reg. Sess. (Okla. 2000)), which was vetoed by the Governor. The concurrent resolution makes certain findings and concludes as follows:
 THAT all state agencies, boards, commissions and departments charged with responsibility pursuant to federal law for the management, distribution, expenditure and accounting of both federal and state funds for the implementation of federal block grants related to job training should exercise the most extreme care in modifying the existing system for the management of the federal job training programs and refrain from action that could jeopardize the existing job training programs in the State of Oklahoma.
H. Con. Res. 1021, 47th Leg., 1st Reg. Sess. (Okla. 1999); 1999 Okla. Sess. Laws 2120.
¶ 20 Section 41.13a does not specifically require legislation to satisfy its alternative conditions for the expenditure of federal block grant funds. Actions taken pursuant to the statutes authorizing the Legislature, through its committees, to take actions in regard to federal grant block funds (see 74 O.S.1991, §§ 452.7[74-452.7](B)(1), (C),[10] 452.8(A), (C)) may constitute an "authorization" or "other formal expression of legislative intent." The Legislature may also express legislative intent through a concurrent resolution, as was done in H. Con. Res. 1021, 47th Leg., 1st Reg. Sess. (Okla. 1999); 1999 Okla. Sess. Laws 2120.
¶ It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Oklahoma Employment Security Commission has theauthority under Oklahoma law to expend Workforce Investment ActBlock Grant funds without State legislation. The appropriationrequirement of Okla. Const. art. V, § 55 applies only to Statefunds; it does not apply to funds held in a custodial capacity,such as federal block grant funds that are held for specificpurposes designated by federal law. The requirement of Section41.13a of Title 62 may be satisfied either by legislation or someother expression of legislative intent, such as a concurrentresolution.
 2. A.G. Opin. 81-159, which determined that all federal fundsreceived by the State are subject to Article X, Section 23, ishereby withdrawn as being inconsistent with the holding inState ex rel. Department of Transportation, 646 P.2d 605(Okla. 1982).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
KATHRYN BASS ASSISTANT ATTORNEY GENERAL
[1] The Act, codified in scattered sections of 29 U.S.C. and 20 U.S.C., includes Title I (job training); Title II (adult education); Title III (amendments to Wagner-Peyser and related acts); Title IV (Rehabilitation Act amendments); and Title V (general provisions).
[2] State law requires the Oklahoma Employment Security Commission to take actions necessary to secure to this State all advantages under the federal laws relating to employment services. See 40 O.S. Supp. 1999, § 4-702[40-4-702](2).
[3] Article X, Section 23 requires the State Board of Equalization to certify the amount of revenue available for appropriation by the Legislature; the amount certified must be 95% of an itemized estimate made by the Board, which includes all sources of revenue to the General Revenue Fund and to each Special Revenue Fund appropriated directly by the Legislature.See Okla. Const. art. X, § 23(1).
[4] "Federal revenue sharing was in effect between 1972 and 1980, and all state legislatures appropriated federal revenue sharing funds." Colorado Gen. Assembly v. Lamm, 738 P.2d 1156,1159 (Colo. 1987).
[5] A.G. Opin. 81-159, which determined that all federal funds received by the State are subject to Article X, Section 23, is hereby withdrawn as being inconsistent with the holding in Stateex rel. Department of Transportation, 646 P.2d 605 (Okla. 1982).
[6] Decisions in other states vary on the question of whether federal funds are required to be appropriated by the State Legislature prior to expenditure. See MacManus v. Love,499 P.2d 609 (Colo. 1972) (portion of bill providing that any federal funds received by an agency shall not be expended without legislative appropriation violated constitutional doctrine of separation of powers by attempting to limit the executive branch in its administration of federal funds); Opinion of the Justicesto the Senate, 378 N.E.2d 433 (Mass. 1978) (a proposed statute requiring state legislative appropriation of all federal grants and funds would be unconstitutional). But see Anderson v.Regan, 425 N.E. 2d 792 (N.Y. 1981) (federal funds in the state treasury must be appropriated by the legislature before they may be disbursed by the executive department); Shapp v. Sloan,367 A.2d 791 (Pa.Commw.Ct. 1976) (upheld a statute requiring all federal funds to be appropriated).
[7] Strictly speaking, Article 23 of Section X does not provide for appropriation, but rather requires the State Board of Equalization to certify the amounts available for appropriation, including "appropriated federal funds," such as the revenue sharing funds addressed in Woods. See Woods, 517 P.2d at 432.
[8] A resolution is "[a] formal expression of the opinion or will of an official body or a public assembly, adopted by vote[.]" Black's Law Dictionary 1310 (6th ed. 1990). A legislative resolution is a mere expression of opinion and is not a "law." See Hawks v. Bland, 9 P.2d 720 (Okla. 1932).
[9] Section 452.7 was held to be an unconstitutional abridgment of separation of powers in Attorney General Opinion 82-45. See
A.G. Opin. 82-45. The rationale was that the power to apply for federal financial assistance had been conferred upon executive branch agencies and Section 452.7 gives the Legislature absolute control over the exercise of those powers in violation of the separation of powers doctrine. See 74 O.S. 1991, § 452.7[74-452.7]. As an exception to the general rule that Attorney General Opinions are binding upon state agencies, an Opinion declaring that an act of the Legislature is unconstitutional is advisory only. SeeYork v. Turpen, 681 P.2d 763, 767 (Okla. 1984).
[10] See footnote 9.