Dear Senator Easley,
¶ 0 This office has received your request for an official Attorney General Opinion asking, in effect, the following questions:
 1. Do federal statutes or regulations prevent the Oklahoma Department of Public Safety ("DPS") from apportioning federal recreational boating safety grant funds in the manner prescribed by 47 O.S. 2001, § 2-105.6A[47-2-105.6A] which directs the DPS to distribute federal funds for boat safety functions?
 2. If the answer is no, is the DPS required to apportion said federal grant money using a formula based on the number of permanently moored boats located on each of the eligible waters of the State, including the waters of the Grand River within the jurisdiction of the Grand River Dam Authority, as directed in 47 O.S. 2001, § 2-105.6A[47-2-105.6A]?
¶ 1 Your questions relate to the effect, if any, the Oklahoma statutory provisions found at 47 O.S. 2001, § 2-105.6A[47-2-105.6A] have on the distribution of federal grant monies received by the State of Oklahoma pursuant to federal recreational boating safety grant provisions, as authorized by 46 U.S.C. §§ 13101-13110. Before discussing the interplay between i) the federal law; ii) the state law; and iii) the contract entered into between the State of Oklahoma and the United States of America, it is necessary to discuss each separately.
 I. The Federal Law: 46 U.S.C. §§ 13101-13110
¶ 2 The federal recreational boating safety program is set forth at 46 U.S.C. §§ 13101-13110. In pertinent part Section 13101 states the following purpose:
 (a) To encourage greater State participation and uniformity in boating safety efforts, and particularly to permit the States to assume the greater share of boating safety education, assistance, and enforcement activities, the Secretary shall carry out a national recreational boating safety program. Under this program, the Secretary shall make contracts with, and allocate and distribute amounts to, eligible States to assist them in developing, carrying out, and financing State recreational boating safety programs.
Id.
¶ 3 Accordingly, under this authority the federal government enters into contracts with the states for federal funds to assist in boating safety education and enforcement.
¶ 4 In states where an approved state recreational boating safety program has been established, the federal government enters into a contract with the state after the state demonstrates:
 (1) the program submitted by that State is consistent with this chapter and chapters 61 and 123 of this title;
 (2) amounts distributed will be used to develop and carry out a State recreational boating safety program containing the minimum requirements of subsection (c) of this section;
 (3) sufficient State matching amounts are available from general State revenue, undocumented vessel numbering and license fees, State marine fuels taxes, or from a fund constituted from the proceeds of those taxes and established to finance a State recreational boating safety program; and
 (4) the program submitted by that State designates a State lead authority or agency that will carry out or coordinate carrying out the State recreational boating safety program supported by financial assistance of the United States Government in that State, including the requirement that the designated State authority or agency submit required reports that are necessary and reasonable to carry out properly and efficiently the program and that are in the form prescribed by the Secretary.
46 U.S.C. § 13102(a) (2001).
¶ 5 For eligible programs, the federal government allocates the total available federal funds as follows:
 (1) One-third shall be allocated equally each fiscal year among eligible States.
 (2) One-third shall be allocated among eligible States that maintain a State vessel numbering system approved under chapter 123 of this title and a marine casualty reporting system approved under this chapter so that the amount allocated each fiscal year to each eligible State will be in the same ratio as the number of vessels numbered in that State bears to the number of vessels numbered in all eligible States.
 (3) One-third shall be allocated so that the amount allocated each fiscal year to each eligible State will be in the same ratio as the amount of State amounts expended by the State for the State recreational boating safety program during the prior fiscal year bears to the total State amounts expended during that fiscal year by all eligible States for State recreational boating safety programs.
46 U.S.C. § 13103(a) (2001).
¶ 6 Therefore, for the program in Oklahoma, the first portion of the amount received by Oklahoma is a fixed amount; the second portion is based on the ratio of numbered vessels in Oklahoma as to the numbered vessels in all eligible states; and the last portion is based on a ratio using the amount of monies expended by Oklahoma in prior fiscal years as to the amounts expended by all eligible states in that same year.
 II. Oklahoma State Law: 47 O.S. 2001, § 2-105.6A[47-2-105.6A]
¶ 7 In 2001 the Legislature passed Senate Bill 440, which created a new section of law codified at 47 O.S. 2001, § 2-105.6A[47-2-105.6A]. The new section provides:
 In addition to the powers, duties and responsibilities authorized by Section 2-105.6 of Title 47 of the Oklahoma Statutes, the Department of Public Safety Lake Patrol is hereby directed and authorized to distribute all federal funds, available to the Department for boat safety functions, using a formula based on the number of permanently moored boats located on each of the eligible waters of the state, which shall include the waters of the Grand River within the jurisdiction of the Grand River Dam Authority, unless otherwise directed by federal law.
Id.
¶ 8 Senate Bill 440 also included a new section of law codified at 82 O.S. 2001, § 862.1[82-862.1] which provides, in pertinent part:
 B. The Grand River Dam Authority is hereby authorized to accept its portion of any federal funds distributed by the Department of Public Safety for the purpose of providing boat safety functions. Such funds will be made available by the Department of Public Safety using a formula based on the number of permanently moored boats located on each of the eligible waters of this state pursuant to the provisions of Section 8 of this act [i.e., 47 O.S. 2001, § 2-105.6A[47-2-105.6A]].
Id.
¶ 9 Also applicable to the discussion of Oklahoma law relating to boating safety is 63 O.S. 2001, § 4204[63-4204] which provides in part:
 A. The provisions of the Oklahoma Boating Safety Regulation Act shall apply to the waters of this state under the jurisdiction of the Grand River Dam Authority, provided, the Department of Public Safety may have jurisdiction to administer and enforce the provisions of the Oklahoma Boating Safety Regulation Act upon waters of this state under the jurisdiction of the Grand River Dam Authority. The administration and enforcement of the Oklahoma Boating Safety Regulation Act upon the waters under the jurisdiction of the Grand River Dam Authority are vested in the Grand River Dam Authority. Said Authority, and its employees, shall, except as otherwise provided in this section, have the same authority with respect to the enforcement and administration of the Oklahoma Boating Safety Regulation Act upon such waters as are vested by the Oklahoma Boating Safety Regulation Act in the Department of Public Safety with respect to the other waters of this state.
Id. (footnote omitted).
 III. Contract Between The United States And Oklahoma
¶ 10 The DPS provided this office with an unsigned and undated copy of the Financial Agreement Between Department of Transportation/United States Coast Guard and the State of Oklahoma, Agreement No. 12.0140. Therein, for the fiscal year 2002, the United States agreed to distribute $931,680 to Oklahoma subject to 46 U.S.C. §§ 13103(b), 13104(a) and 13108(a)(3), (b).See Agreement No. 12.0140(B) (on file with Attorney General's Office). Oklahoma agreed to provide $3,020,600 in state matching funds for fiscal year 2002. See Agreement No. 12.0140(C). The State's matching funds are derived from general State revenues, undocumented vessel numbering and license fees, State marine fuels taxes, or other funds established to finance the State Recreational Boating Safety Program. Id.
 IV. Analysis Of Question 1
¶ 11 You first ask whether federal regulations prohibit the DPS from distributing these federal funds to another State agency based on the formula set forth in 47 O.S. 2001, § 2-105.6A[47-2-105.6A].
¶ 12 The federal statutes require a state to designate a lead agency to coordinate the state recreational boating safety program. 46 U.S.C. § 13102(a)(4) (2001). There is, however, no federal statute prohibiting more than one agency in any state from receiving federal money. In fact, the federal regulations for the expenditure of federal grant funds specifically permit the use of funds by "subgrantees." 49 C.F.R. § 18.20 (1988). The federal regulations hold the lead agency as the "grantee" responsible for proper financial reporting and for compliance with the terms of the program by the subgrantee.49 C.F.R. §§ 18.20(b), 18.40(a) (1988). The regulations also state:
 Grantees need not apply the forms prescribed in this section [financial reporting] in dealing with their subgrantees. However, grantees shall not impose more burdensome requirements on subgrantees.
49 C.F.R. § 18.41(a)(2) (1988).
¶ 13 There is no federal requirement that the United States approve a subgrantee of a lead agency. There is no federal requirement for a particular form or type of application for a subgrantee to use to request a share of the federal funds from a lead agency. In short, federal regulations specifically allow for the use of federal grants by subgrantees and provide little interference in the method in which a particular state chooses to allocate the federal funds between different state agencies (provided of course, the funds are used for the purpose set forth in the grant).
¶ 14 As the federal scheme envisions the use of the federal grant monies by both a state lead agency (i.e., the grantee) and other agencies (i.e., the subgrantees), the question becomes one of the methodology a state uses to allocate its federal grant funds between various state agencies. Neither the federal statutes nor the federal regulations dictate a particular allocation as between state agencies. Of course, these federal grant monies cannot be used by Oklahoma for purposes other than those outlined by the grant which pertain to boating safety.
 Federal money deposited in the state treasury pursuant to some grant-in-aid program is held in trust for a specific purpose. Like other custodial funds, it retains its original legal character. The legislature wields no authority over such funds. It may not subvert congressional policy by diverting the money to another purpose. Once accepted by the state, federal funds stand burdened with a trust which follows them from the moment of deposit. . . . This is so because the conditions of the federal grant also affect, and impress themselves upon, the expenditure of matching funds.
In re State Dep't of Transp., 646 P.2d 605, 609-10 (Okla. 1982) (footnotes omitted). In other words, Oklahoma cannot use the federal recreational boating safety grant funds for unrelated projects.
¶ 15 The State statute at issue, 47 O.S. 2001, § 2-105.6A[47-2-105.6A], directs the DPS to distribute the federal funds available for boat safety using a formula "based on the number of permanently moored boats located on each of the eligible waters of the state." Title 82 O.S. 2001, § 862.1[82-862.1] authorizes the Grand River Dam Authority ("GRDA") to accept its portion of those funds "for the purpose of providing boat safety functions." These Oklahoma Statutes do not seek to divert the federal grant monies. Rather, the statutes direct the DPS as to a method of allocation between the agencies.
¶ 16 The federal funds are not a reimbursement of funds expended by the DPS. Oklahoma's share of the federal funds is based on three separate factors. Title 46 U.S.C. § 13103(a) sets forth the three factors as the method for allocation between eligible states. The first portion of Oklahoma's allocation is a sum equal to that which each qualifying state receives. This first portion does not increase or decrease depending on the amount of money expended by the State. It is simply an equal share received by all eligible states. For fiscal year 2002, the equal allocation distributed to each eligible state was $340,137.See Letter from John M. Malatak, Chief, Program Development and Implementation Division, United States Department of Transportation, United States Coast Guard, to Lieutenant Bob Sanders, Lake Patrol Section of the Department of Public Safety (Dec. 7, 2001) (on file with Attorney General's Office).
¶ 17 The second portion of Oklahoma's allocation is based on the number of boats which have been numbered in accordance with a vessel numbering system. Again, the amount of this allocation is not dependent on the amount of money expended by the DPS. For fiscal year 2002, Oklahoma's allocation for numbered boats was $346,218. Id.
¶ 18 The last portion of Oklahoma's allocation is based on the amount the State expended for the State recreational boating safety program during the prior fiscal year. The amount of this allocation, therefore, depends on the expenditures of the entireState, not just the DPS. While the expenditures of the DPS are included in this amount, any other Oklahoma agency which expends money in compliance with the grant may be included. For fiscal year 2002, Oklahoma's share based on this third factor was $245,325. Id.
¶ 19 Consequently, only a portion of the total funds received by Oklahoma from the United States are based on the amount of money the State expends for the recreational boating safety program. This sum may include amounts expended by both the DPS and the GRDA for the purpose of providing boating safety functions. The remaining two categories which dictate the federal allocation to Oklahoma are completely independent of the amount of money expended by the State.
¶ 20 Likewise, the terms of the grant as provided by the contract between the United States and Oklahoma do not conflict with 47 O.S. 2001, § 2-105.6A[47-2-105.6A]. The contract is between the "Department of Transportation/United States Coast Guard" and "The State of Oklahoma." The DPS is the lead agency for the grant but the State of Oklahoma is the recipient of the federal funds.Id. Section 2-105.6A sets forth a formula to determine the amount of apportionment between the various Oklahoma state agencies which provide boat safety functions on Oklahoma waters. There are no contractual provisions which prohibit this manner of apportionment between Oklahoma state agencies. Although all participating agencies must properly account for the use of the funds, the federal regulations and contract do not prohibit this method of allocation.
¶ 21 Accordingly, in answer to your first question, federal regulations do not prevent the DPS from apportioning federal recreational boating safety grant funds as prescribed by 47 O.S. 2001, § 2-105.6A[47-2-105.6A].
 V. Analysis Of Question 2
¶ 22 Since neither federal statutes nor federal regulations prevent the DPS from allocating federal recreational boating safety grant funds as prescribed by 47 O.S. 2001, § 2-105.6A[47-2-105.6A], your second question asks whether the DPS is required to distribute the funds "using a formula based on the number of permanently moored boats located on each of the eligible waters of the state," including those within the jurisdiction of the GRDA. Id.
¶ 23 Section 2-105.6A authorizes and directs the DPS to distribute the federal funds. Further, 82 O.S. 2001, § 862.1[82-862.1] states that the DPS will make such funds available. Therefore, the DPS must follow the legislative mandate by making the federal funds available and by distributing the funds to other State agencies which may qualify for the funds, including the GRDA. You do not ask about, and this Opinion does not address, the particular method or rules which the DPS may promulgate to determine the amount of allocation "based on the number of permanently moored boats" within any jurisdiction.
¶ 24 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Neither federal statutes nor regulations prevent the Oklahoma Department of Public Safety from apportioning federal recreational boating safety grant funds received in compliance with 46 U.S.C. §§ 13101-13110 in the manner prescribed by 47 O.S. 2001, § 2-105.6A[47-2-105.6A].
 2. The Department of Public Safety must follow the legislative mandates of 47 O.S. 2001, § 2-105.6Aand 82 O.S. 2001, § 862.1by making available and distributing the federal recreational boating safety grant funds to other State agencies which may qualify for the funds, including the Grand River Dam Authority. The Department of Public Safety shall distribute the funds using a "formula based on the number of permanently moored boats located on each of the eligible waters of the state." 47 O.S. 2001, § 2-105.6A[47-2-105.6A].
W.A. DREW EDMONDSON Attorney General of Oklahoma
GRETCHEN ZUMWALT-SMITH Assistant Attorney General